155 P.3d 415 (2006)
The PEOPLE of the State of Colorado, Plaintiff-Appellee,
v.
JoAnn WENZINGER, Defendant-Appellant.
No. 04CA2322.
Colorado Court of Appeals, Div. V.
June 1, 2006.
As Modified on Denial of Rehearings July 13, 2006.
*417 John W. Suthers, Attorney General, John D. Seidel, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee.
David S. Kaplan, Colorado State Public Defender, Ann M. Aber, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant.
RUSSEL, J.
Defendant, JoAnn Wenzinger, appeals the trial court's order denying her motion for postconviction relief. We affirm.

I. Background
In 2001, Wenzinger pled guilty to harassment by stalking, a class four felony that carries a presumptive sentencing range of two to six years. Sections 18-1.3-401(1)(a)(V)(A), 18-9-111(4)(b)(III), (5)(b), C.R.S.2005. The trial court found extraordinary aggravating circumstances and sentenced her to ten years in prison. See § 18-1.3-401(6), C.R.S.2005.
Wenzinger appealed, arguing that her aggravated range sentence violated the rule of Apprendi v. New Jersey, 530 U.S. 466, 490, 120 S.Ct. 2348, 2362-63, 147 L.Ed.2d 435 (2000). A division of this court rejected her argument. Relying on People v. Allen, 78 P.3d 751 (Colo.App.2001), overruled by Lopez v. People, 113 P.3d 713, 729 n. 13 (Colo.2005), the division ruled that Apprendi did not apply to any sentence imposed within the maximum aggravated range. People v. Wenzinger, 2003 WL 194893 (Colo.App. No. 01CA1289, Jan. 30, 2003) (not published pursuant to C.A.R. 35(f)).
In June 2004, the Supreme Court announced Blakely v. Washington, 542 U.S. 296, 303, 124 S.Ct. 2531, 2537, 159 L.Ed.2d 403 (2004), which held that the "statutory maximum" for purposes of Apprendi "Is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." Thus, under Blakely, "the relevant `statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings." Blakely v. Washington, supra, 542 U.S. at 303-04, 124 S.Ct. at 2537.
In July 2004, Wenzinger filed a "Motion for Correction of Illegal Sentence Pursuant to Crim. P. 35(a)." She claimed that her sentence was illegal because, under Blakely, "a trial court has no authority to make findings of fact to use in discretionary aggravation of a sentence."
*418 The trial court denied the motion, ruling that Blakely did not apply retroactively to Wenzinger's case.

II. Preliminary Issues
Because Wenzinger's motion was filed after July 1, 2004, it is governed by the recent amendments to Crim. P. 35(a) and (c). We consider two preliminary issues under the amended rules.

A. Crim. P. 35(a) or 35(c)?
First, we consider whether Wenzinger's motion stated a claim under Crim. P. 35(a). We conclude that it did not.
Before it was amended, Crim. P. 35(a) provided: "The court may correct an illegal sentence at any time and may correct a sentence imposed in an illegal manner within the time provided herein for the reduction of sentence."
Although the term "illegal sentence" could have been read to comprise a variety of procedural infirmities, the Colorado Supreme Court construed it narrowly. The court held that a sentence is "illegal" under Crim. P. 35(a) if it is "inconsistent with the statutory scheme outlined by the legislature." People v. Rockwell, 125 P.3d 410, 414 (Colo.2005); see also Delgado v. People, 105 P.3d 634, 635 (Colo.2005); Downing v. People, 895 P.2d 1046, 1050 (Colo.1995); People v. Dist. Court, 673 P.2d 991, 995 (Colo.1983); People v. Green, 36 P.3d 125, 126-27 (Colo.App.2001).
Accordingly, a defendant could not bring an "illegal sentence" claim under the former version of Crim. P. 35(a) if the sentence was consistent with the statutory scheme but imposed in an unconstitutional manner. Instead, the defendant was required to pursue other avenues of relief, such as a claim that sentence was "imposed in violation of the Constitution" under Crim. P. 35(c)(2)(I). See, e.g., People v. Gardner, 55 P.3d 231, 232 (Colo.App.2002) (Apprendi challenge, asserted under previous version of Crim. P. 35(a) and (c), was cognizable under Crim. P. 35(c)).
The term "illegal sentence" does not appear in the amended rule. Instead, Crim. P. 35(a) now provides: "The court may correct a sentence that was not authorized by law or that was imposed without jurisdiction at any time and may correct a sentence imposed in an illegal manner within the time provided herein for the reduction of sentence."
Like its predecessor, the phrase "not authorized by law" could be read to comprise many procedural infirmities. But we reject a broad interpretation for three reasons:
1. It would blur the distinction between sentences that are void because they were imposed in excess of the court's statutory authority, see Downing v. People, supra, and sentences that are voidable because they were "imposed in an illegal manner" or "imposed in violation of the Constitution." See People v. Gardner, supra; People v. Green, supra.

2. It would thus undermine the statute of limitations to which Crim. P. 35(c) motions have been subject since 1984. See § 16-5-402(1), C.R.S.2005; Robbins v. People, 107 P.3d 384 (Colo. 2005).
3. It would similarly undermine the 120-day limit that Crim. P. 35(a) imposes by reference to "the time provided herein for the reduction of sentence" under Crim. P. 35(b)on claims that sentence was "imposed in an illegal manner."
We conclude that the amended version of Crim. P. 35(a) merely codifies case law defining "illegal sentence." Accordingly, we hold that a sentence is "not authorized by law" under the amended version of Crim. P. 35(a) if it is inconsistent with the statutory scheme outlined by the legislature. See People v. Rockwell, supra; Delgado v. People, supra; People v. Green, supra. A sentence is "imposed without jurisdiction" if it lies within the range contemplated by statute but was otherwise imposed in excess of the court's subject matter jurisdiction. See People v. Harris, 934 P.2d 882, 883 (Colo.App. 1997) (sentence was illegal because the trial court lacked authority to dictate the conditions of confinement).
Because Wenzinger filed her motion more than 120 days after the end of her *419 direct appeal, she could not claim that her sentence was "imposed in an illegal manner" under the amended Crim. P. 35(a). And because she alleged a violation of constitutional rights under Apprendi and Blakely, she failed to state a claim that her sentence was "not authorized by law" or "imposed without jurisdiction." Apprendi or Blakely error does not undermine a court's statutory authority to impose sentence or otherwise deprive the court of jurisdiction. See United States v. Cotton, 535 U.S. 625, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002) (the trial court violated Apprendi when it based an enhanced sentence on a fact that was omitted from the indictment and found by the judge, but there was no jurisdictional defect); People v. Gardner, supra.
We therefore conclude that Wenzinger's motion was not cognizable under Crim. P. 35(a) and was reviewable only under Crim. P. 35(c)(2)(l).

B. Is it Successive?
The People argue that Wenzinger's claim should be rejected as successive because it was previously litigated on direct appeal. Normally, we would resolve the People's procedural argument before addressing the merits of the trial court's ruling. Here, however, the issues are intertwined.
Crim. P. 35(c)(3)(VI) states that a court "shall deny any claim that was raised and resolved in a prior appeal or postconviction proceeding on behalf of the same defendant." However, subsection (b) of Crim. P. 35(c)(3)(VI) provides an exception for "[a]ny claim based on a new rule of constitutional law that was previously unavailable, if that rule has been applied retroactively by the United States Supreme Court or Colorado appellate courts."
Because there is an exception for new constitutional rules that apply retroactively, the People's procedural argument presents the same question that underlies our review of the merits: Does Blakely apply retroactively to cases on collateral review?
We now address that question.

III. Discussion
In People v. Johnson, 121 P.3d 285, 287 (Colo.App.2005) (cert. granted Oct. 11, 2005), a division of this court held that "Blakely's interpretation of [the Apprendi] rule must necessarily apply retroactively to the date the rule was established." We acknowledge that Johnson supports Wenzinger's position, but we disagree with the holding of that case. See In re Estate of Becker, 32 P.3d 557 (Colo.App.2000) (one division of this court is not obligated to follow the precedent established by another division), aff'd sub nom. In re Estate of DeWitt, 54 P.3d 849 (Colo. 2002).
As discussed further, we conclude that Blakely established a new rule of criminal procedure that does not apply retroactively to Wenzinger's case.

A. Substantive or Procedural?
As a threshold matter, we consider whether the rule in Blakely is substantive or procedural. We do this because new substantive rules generally apply retroactively to cases that are final, whereas new procedural rules do not. See Schriro v. Summerlin, 542 U.S. 348, 352-53, 124 S.Ct. 2519, 2522-23, 159 L.Ed.2d 442 (2004).
A rule is substantive if it "alters the range of conduct or the class of persons that the law punishes"; it is procedural if it regulates "the manner of determining the defendant's culpability." Schriro v. Summerlin, supra, 542 U.S. at 353, 124 S.Ct. at 2523.
The rule in Blakely does not alter the range of conduct or the class of persons punished by the law. It merely regulates the manner of determining the defendant's punishment. Therefore, like other courts that have addressed the issue, we conclude that the rule in Blakely is procedural. See United States v. Price, 400 F.3d 844, 846 (10th Cir.2005); McReynolds v. United States, 397 F.3d 479, 480-81 (7th Cir.2005); see also Schriro v. Summerlin, supra, 542 U.S. at 353, 124 S.Ct. at 2523 (characterizing, as procedural, the rule of Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), which requires a jury determination *420 of circumstances necessary for imposition of the death penalty).

B. Teague Test
In Edwards v. People, 129 P.3d 977 (Colo.2006), the Colorado Supreme Court adopted the federal test for determining whether constitutional rules of criminal procedure apply retroactively to cases on collateral review. This test, which was established in Teague v. Lane, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), and applied in Beard v. Banks, 542 U.S. 406, 124 S.Ct. 2504, 159 L.Ed.2d 494 (2004), requires a three-part inquiry: (1) whether the conviction is final; (2) whether the rule is new; and (3) if the rule is new, whether the rule meets the exceptions to nonretroactivity. Beard v. Banks, supra, 542 U.S. at 411, 124 S.Ct. at 2510; Edwards v. People, supra.

1. Finality
New rules of constitutional procedure apply retroactively to cases that are pending on direct review. Griffith v. Kentucky, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987). But they generally do not apply to cases that are already final and on collateral review. Teague v. Lane, supra, 489 U.S. at 310, 109 S.Ct. at 1075. For this reason, it is necessary to determine whether Wenzinger's conviction and sentence were final when Blakely was announced.
For purposes of retroactivity analysis, a state conviction becomes final when the availability of a direct appeal to the state courts has been exhausted and the time for filing a petition for writ of certiorari in the United States Supreme Court has elapsed or a timely filed certiorari petition has been denied. Beard v. Banks, supra, 542 U.S. at 411, 124 S.Ct. at 2510;Caspari v. Bohlen, 510 U.S. 383, 390-91, 114 S.Ct. 948, 953-54, 127 L.Ed2d 236 (1994).
Here, Wenzinger's direct appeal was exhausted on June 16, 2003, when the Colorado Supreme Court denied her petition for certiorari. Her conviction became final on September 16, 2003, when the ninety-day period for filing a petition for writ of certiorari in the United States Supreme Court expired. See Caspari v. Bohlen, supra; Winsett v. Washington, 130 F.3d 269, 275 (7th Cir. 1997). Therefore, Wenzinger's conviction and sentence had been final for approximately nine months when Blakely was announced on June 24, 2004.

2. New Rule
The subject of retroactivity arises only in the presence of new rules. Retroactivity is not an issue if a court merely states the law that was in effect when the defendant's conviction became final. See Fiore v. White, 531 U.S. 225, 228, 121 S.Ct. 712, 714, 148 L.Ed.2d 629 (2001). Therefore, we must determine whether Blakely announced a new rule or, as the division in Johnson concluded, merely clarified the rule announced in Apprendi. See People v. Johnson, supra, 121 P.3d at 287.
"[A] case announces a new rule if the result was not dictated by precedent existing at the time the defendant's conviction became final." Teague v. Lane, supra, 489 U.S. at 301, 109 S.Ct. at 1070. To make this determination, we "assay the legal landscape" when Wenzinger's sentence became final and ask whether the rule announced in Blakely was dictated by then existing precedent so that the error in Wenzinger's sentence would have been "apparent to all reasonable jurists." Beard v. Banks, supra, 542 U.S. at 413, 124 S.Ct. at 2511 (quoting Lambrix v. Singletary, 520 U.S. 518, 527-28, 117 S.Ct. 1517, 1524, 137 L.Ed.2d 771 (1997)).
Under this test, we conclude that Blakely announced a new rule of law.
Before Blakely, all federal appellate courts and most state courts understood that, within the meaning of Apprendi, the phrase "statutory maximum" meant the maximum sentence authorized by the governing statute, regardless of any factfinding that a court might conduct before imposing sentence. See People v. Allen, supra, 78 P.3d at 755; accord State v. Febles, 210 Ariz. 589, 115 P.3d 629, 633-34 & n. 5 (Ct.App.2005) (collecting cases).
Blakely altered this understanding, holding that "the `statutory maximum `for Apprendi purposes is the maximum sentence a *421 judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." Blakely v. Washington, supra, 542 U.S. at 303, 124 S.Ct. at 2537.
Thus, while Apprendi comports with the Blakely majority's interpretation of "statutory maximum," this interpretation was neither dictated by Apprendi nor apparent to all reasonable jurists. See Blakely v. Washington, supra, 542 U.S. at 320 n. 1, 124 S.Ct. at 2547 (O'Connor, J., dissenting); Allen v. Reed, 427 F.3d 767, 775 (10th Cir.2005) (when the Colorado Court of Appeals decided People v. Allen, supra, its interpretation of Apprendi was not unreasonable); United States v. Price, supra, 400 F.3d at 848 (after Apprendi, but before Blakely, a court would not have felt compelled to conclude that Blakely's rule was constitutionally required); see also Kevin R. Reitz, The New Sentencing Conundrum: Policy and Constitutional Law at Cross-Purposes, 105 Colum. L.Rev. 1082, 1091-92 (2005) ("Here was the huge surprise in Blakely: that a guideline presumption nested within broader statutory parameters should itself be understood as a statutory maximum. Indeed, the Supreme Court, in a number of prior rulings concerning the federal sentencing guidelines, had consistently characterized presumptive guideline ranges as falling within the outer boundaries of statutory maximum penalties. Most observers did not foresee the new constitutional definition of `statutory maximum' the Blakely Court would pronounce. . . ." (footnote omitted)); R. Craig Green, Apprendi's Limits, 39 U. Rich. L.Rev. 1155, 1162-63 (2005) ("After Apprendi, every court of appeals held that nonstatutory Guideline enhancements satisfy the Constitution because Guideline sentences are always less than the crime of conviction's statutory maximum. Although numerous defendants sought review of those decisions, the Supreme Court denied certiorari, suggesting that the dissenters might have overstated Apprendi's disruptive potential. Then came Blakely v. Washington." (footnotes omitted)).

3. Exceptions
We now consider whether Blakely's new rule falls within an exception to the general rule of nonretroactivity. See Schriro v. Summerlin, supra, 542 U.S. at 352, 124 S.Ct. at 2523. We conclude that it does not.

a. Substantive Law
The general bar against retroactivity does not apply to rules "forbidding punishment `of certain primary conduct or to rules prohibiting a certain category of punishment for a class of defendants because of their status or offense." Beard v. Banks, supra, 542 U.S. at 416, 124 S.Ct. at 2513 (quoting Penry v. Lynaugh, 492 U.S. 302, 330, 109 S.Ct. 2934, 2953, 106 L.Ed.2d 256 (1989)). Although courts say that such rules fall within the "first exception" to Teague's rule of nonretroactivity, they are "more properly viewed as substantive and therefore not subject to Teague's bar." Beard v. Banks, supra, 542 U.S. at 417 n. 7, 124 S.Ct. at 2513; see Schriro v. Summerlin, supra, 542 U.S. at 352 n. 4, 124 S.Ct. at 2522.
As noted in Part III.A of this opinion, Blakely's rule is procedural, not substantive. Blakely did not decriminalize a particular type of conduct. Nor did it alter the range of conduct or the class of persons punished by the law. See Schriro v. Summerlin, supra, 542 U.S. at 352, 124 S.Ct. at 2522-23.
We therefore conclude that the Blakely rule does not fall within the "first exception" to Teague.

b. Watershed Rule
The second exception applies to "watershed rules" that implicate the fundamental fairness and accuracy of criminal proceedings. Beard v. Banks, supra, 542 U.S. at 417, 124 S.Ct. at 2513. "To fall within this exception, a new rule must meet two requirements: Infringement of the rule must `seriously diminish the likelihood of obtaining an accurate conviction,' and the rule `must alter our understanding of the bedrock procedural elements' essential to the fairness of a proceeding." Tyler v. Cain, 533 U.S. 656, 665, 121 S.Ct. 2478, 2484, 150 L.Ed.2d 632 (2001) (quoting Sawyer v. Smith, 497 U.S. 227, 242, 110 S.Ct. 2822, 2831, 111 L.Ed.2d 193 (1990) (internal quotation marks omitted)); see also Schriro v. Summerlin, supra, 542 U.S. at 355-56, 124 S.Ct. at 2525 (quoting Teague, *422 supra, 489 U.S. at 312-13, 109 S.Ct. at 1076: "the question is whether judicial factfinding so `seriously diminishe[s]' accuracy that there is an `impermissibly large risk' of punishing conduct the law does not reach").
New rules will rarely qualify under the "watershed" exception:
We have repeatedly emphasized the limited scope of the second Teague exception, explaining that "it is clearly meant to apply only to a small core of rules requiring observance of those procedures that . . . are implicit in the concept of ordered liberty." And, because any qualifying rule "would be so central to an accurate determination of innocence or guilt [that it is] unlikely that many such components of basic due process have yet to emerge," it should come as no surprise that we have yet to find a new rule that falls under the second Teague exception.
Beard v. Banks, supra, 542 U.S. at 417, 124 S.Ct. at 2513-14 (citations omitted; quoting O'Dell v. Netherland, 521 U.S. 151, 157, 117 S.Ct. 1969, 1973, 138 L.Ed.2d 351 (1997), and Graham v. Collins, 506 U.S. 461, 478, 113 S.Ct. 892, 903, 122 L.Ed.2d 260 (1993)).
We conclude that the Blakely rule does not fall under this narrow exception. Although the rule protects the right to a jury, it is not indispensable to the determination of guilt or innocence. See Schriro v. Summerlin, supra, 542 U.S. at 357, 124 S.Ct. at 2526 ("If under [DeStefano v. Woods, 392 U.S. 631, 88 S.Ct. 2093, 20 L.Ed.2d 1308 (1968)] a trial held entirely without a jury was not impermissibly inaccurate, it is hard to see how a trial in which a judge finds only aggravating factors could be.").
We therefore agree with other courts that have declined to apply Blakely retroactively to cases on collateral review. See, e.g., Schardt v. Payne, 414 F.3d 1025 (9th Cir. 2005); United States v. Price, supra; In re Dean, 375 F.3d 1287 (11th Cir.2004); State v. Febles, supra; State v. Houston, 702 N.W.2d 268 (Minn.2005); State v. Evans, 154 Wash.2d 438, 114 P.3d 627 (2005).
Because the rule announced in Blakely is a new rule of criminal procedure that does not apply retroactively to cases on, collateral review, we uphold the trial court's ruling.
The order is affirmed.
Judge WEBB and Judge HAWTHORNE concur.