22CA2136 Peo v Huntley 05-01-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 22CA2136
Douglas County District Court No. 14CR595
Honorable Theresa Slade, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Thomas Andrew Huntley,

Defendant-Appellant.

---

ORDER AFFIRMED AND CASE
REMANDED WITH DIRECTIONS

Division VI
Opinion by JUDGE KUHN
Welling, J., concurs
Schutz, J., dissents

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced May 1, 2025

---

Philip J. Weiser, Attorney General, Jessica E. Ross, Senior Assistant Attorney General & Assistant Solicitor General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Emily Hessler, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1     Defendant, Thomas Andrew Huntley, appeals the postconviction court's order denying his Crim. P. 35(a) motion to vacate the restitution order entered against him.  We affirm the order and remand for correction of the mittimus.

## I.     Background

¶ 2     In 2013, Huntley drove drunk and crashed into another car, injuring the couple inside and leaving one of them with severe brain damage.  Because Huntley was seventeen years old at the time of the incident, the prosecution filed a petition in delinquency in Douglas County Case No. 13JD386.[1]  The prosecution alleged that Huntley committed acts that, if committed by an adult, would constitute criminal offenses, including vehicular assault and driving under the influence (DUI).  Roughly nine months later, the case was transferred to district court, and the prosecution charged Huntley with additional counts as an adult.

¶ 3     The parties resolved the case through a plea arrangement.  Huntley pleaded guilty to one count each of vehicular assault and

---

[1] We take judicial notice of the contents of court records in this related juvenile delinquency case.  *See People v. Sa'ra,* 117 P.3d 51, 56 (Colo. App. 2004).

DUI per se in exchange for the dismissal of all other charges along with an unrelated juvenile delinquency case, Douglas County Case No. 13JD282. As part of his guilty plea, Huntley executed a Crim. P. 11 advisement, which included the following provision regarding restitution: "I understand that the Court will determine the restitution I must pay, if any. The District Attorney's Office may submit a request for restitution within [ninety] days of sentencing. If I object to the restitution, a hearing shall be set by the Court." The parties also addressed restitution in a document entitled "Plea Agreement of the Parties." The section of that agreement labeled "Sentence Agreement" provided, next to the line for restitution, that it was "reserved in this case" and that "[Huntley] admits liability."

¶ 4    On October 2, 2014, the court approved the plea agreement after confirming that Huntley understood its terms. The district court then proceeded to immediate sentencing. It imposed concurrent sentences of six years of probation for the vehicular assault with ninety days in jail and one year in jail for the DUI per se.

¶ 5    As for restitution, the district court said that it would

> reserve restitution for a period of [ninety-one] days. That is, [the prosecution would] have [ninety-one] days to submit a request for restitution. If one is submitted, the defense would have [fourteen] days to file an objection. If an objection is filed, the Court will then direct the matter be set for hearing. If no objection is filed, the Court will simply issue the order for restitution.

¶ 6     On December 19, seventy-seven days after Huntley's sentencing, the prosecutor submitted a request for $28,518.03 in restitution. This figure consisted of $16,843 that the Crime Victim Compensation Board had paid for the victims' medical expenses and $11,675.03 in other expenses that the family had incurred related to the crash. Huntley didn't object or otherwise respond to the request within the fourteen-day deadline the district court had set at sentencing. Accordingly, on January 28, 2015 (118 days after sentencing), the court ordered Huntley to pay the requested amounts. Huntley didn't directly appeal his judgment of conviction or the January 2015 order fixing the amount of restitution.

¶ 7     In April 2019, Huntley pleaded guilty to violating the terms of his probation. Consequently, the district court revoked Huntley's probation and sentenced him to five years in the custody of the Department of Corrections (DOC). A division of this court affirmed

3

the sentence but directed the district court to determine on remand the amount of presentence confinement credit (PSCC) to which Huntley was entitled. *People v. Huntley*, (Colo. App. No. 19CA1119, July 29, 2021) (not published pursuant to C.A.R. 35(e)) (*Huntley I*).

¶ 8     The mandate in *Huntley I* issued on December 22, 2021, and 125 days later, Huntley filed a motion for postconviction relief under Crim. P. 35(a), asserting that the restitution order the district court entered in connection with his 2014 judgment of conviction must be vacated because the court imposed the restitution obligation in violation of section 18-1.3-603, C.R.S. 2024. The postconviction court denied Huntley's motion, reasoning that any infirmities in the original restitution order were rectified in the subsequent probation revocation proceeding when the district court properly ordered him to pay restitution.

## II.    Analysis

¶ 9     On appeal, Huntley contends that the postconviction court erred when it denied his motion challenging the original restitution order. Specifically, he argues that the order must be vacated because (1) the prosecutor didn't move for restitution and the district court "reserved" the issue of restitution in its entirety at the

2014 sentencing hearing; (2) the prosecutor failed to present available restitution information before or at the hearing; and (3) the district court fixed the amount of restitution after the statutory ninety-one-day deadline had already expired.

¶ 10 We disagree with Huntley's first argument and conclude that the other two are properly construed as illegal manner claims. And because he brought those claims roughly seven and a half years after his 2014 judgment of conviction, we further conclude that they are time barred.

### A. Applicable Law and Standard of Review

¶ 11 Crim. P. 35(a) provides that a court may correct a sentence "that was not authorized by law or that was imposed without jurisdiction at any time and may correct a sentence imposed in an illegal manner within the time provided [in the rule] for the reduction of sentence." A sentence is "not authorized by law" if any of its components fail to comply with the sentencing statutes, *People v. Baker*, 2019 CO 97M, ¶ 19, and it is "imposed without jurisdiction" if it was "otherwise imposed in excess of the court's subject matter jurisdiction," *People v. Bowerman*, 258 P.3d 314, 316 (Colo. App. 2010) (quoting *People v. Wenzinger*, 155 P.3d 415,

418 (Colo. App. 2006)).  In contrast, a sentence is "imposed in an illegal manner 'when the trial court ignores essential procedural rights or statutory considerations in forming the sentence.'"  *Id.* (quoting 15 Robert J. Dieter & Nancy J. Lichtenstein, *Colorado Practice Series, Criminal Practice and Procedure* § 21.10 n.10 (2d ed. 2004)).

¶ 12    A court may correct a sentence not authorized by law or imposed without jurisdiction at any time.  Crim. P. 35(a).  But a claim that the sentence was imposed in an illegal manner may only be corrected within 126 days after, as relevant here, (1) the imposition of the defendant's sentence or (2) the issuance of the appellate mandate.  Crim. P. 35(a)-(b).  Thus, an illegal manner claim is time barred if not brought within this timeframe.  *See People v. Collier*, 151 P.3d 668, 673 (Colo. App. 2006) (noting that a defendant's illegal manner claim was time barred because it wasn't asserted within the then-governing 120-day deadline).

¶ 13    The legality of a sentence is a question of law that we review de novo.  *People v. Bassford*, 2014 COA 15, ¶ 20.  Likewise, we review de novo questions of statutory interpretation.  *People v. Weeks*, 2021 CO 75, ¶ 24.

## B.    The Restitution Statute

¶ 14    Colorado's restitution statute imposes set deadlines on the district court and the prosecution to complete certain tasks. § 18-1.3-603.  It provides that every judgment of conviction must "include consideration of restitution," meaning it must include (1) an order fixing a specific amount of restitution; (2) an order that the defendant is obligated to pay restitution but reserving the question of how much restitution is due for up to ninety-one days; (3) an order fixing restitution and requiring the defendant to pay certain future costs; or (4) a specific finding that no victim of the crime suffered a financial loss and thus no restitution is assessed. § 18-1.3-603(1)(a)-(d); *Weeks*, ¶ 29.

¶ 15    Accordingly, an order entered under section 18-1.3-603(1)(b) — reserving the question of how much restitution is due — requires the judgment of conviction to *assign liability* for restitution, even though the amount is determined later.  *See Sanoff v. People*, 187 P.3d 576, 578 (Colo. 2008).  But a district court must still determine the amount of restitution owed within ninety-one days after the judgment of conviction enters unless, before the deadline expires, the court finds good cause for extending the

deadline. *Weeks*, ¶¶ 4-5, 39. Absent an express and timely good cause finding, a district court lacks authority to enter an order fixing the amount of restitution once the statutory deadline has expired. *Id.* at ¶ 45.

¶ 16    The statute also imposes obligations on the prosecution. Specifically, section 18-1.3-603(2) requires the prosecutor to (1) move for restitution before or during the sentencing hearing and (2) present to the court the information in support of the motion before the court enters the judgment of conviction, if the information is then available. *Weeks*, ¶¶ 30-31. To satisfy the latter obligation, the prosecutor must exercise due diligence to obtain and timely present to the court the information about the proposed restitution amount and the identities of the victims. *See id.* at ¶¶ 6 n.3, 30-31; *People v. Brassill*, 2024 COA 19, ¶ 45. If the information is not available at the time of the sentencing hearing, the prosecutor may submit it within ninety-one days of the judgment of conviction unless the district court expressly finds that extenuating circumstances exist that support an extension of that deadline. *Id.* at ¶ 31.

## C.    The District Court Didn't Reserve the Issue
of Restitution at Sentencing

¶ 17    Huntley contends that the prosecutor failed to "*actually move*" for restitution before or during the 2014 sentencing hearing.  He argues that the prosecutor only asked, and the district court ordered, that the entire issue of restitution be reserved for up to ninety-one days.  And because the court failed to enter a timely order requiring him to pay restitution, Huntley posits, the court lacked authority when it later fixed the amount of that obligation.  We're not persuaded.

¶ 18    Section 18-1.3-603(2) doesn't allow the prosecution "to ask that the issue of restitution (not just the amount of restitution) 'remain open' for any period of time after the judgment of conviction enters."  *Weeks*, ¶ 30.  Similarly, while the statute "allows the court to shelve the determination of the *amount* of restitution after entering a preliminary order requiring restitution," it doesn't permit the court to address the issue of restitution "by entering an order deferring that issue in its entirety."  *Id.*  Put differently, a district court must at least enter a preliminary order about whether the defendant is liable for restitution.  *Sanoff*, 187 P.3d at 578.

9

¶ 19    In arguing that the district court here failed to enter such an order, Huntley argues that the prosecutor merely asked the court to reserve the issue of restitution in its entirety.  By doing so, he contends, the prosecutor failed to timely move for restitution, which would have allowed the court to enter an order requiring Huntley to pay restitution but postponing a determination of the amount owed for up to ninety-one days.  *See Weeks*, ¶ 30 (noting that a court may enter an order under section 18-1.3-603(1)(b) only after the prosecution has made a motion for restitution).  In support of this argument, Huntley points out that the prosecutor asked the court during the sentencing hearing "that restitution be reserved on both this case and 13JD282."

¶ 20    But the record shows that by the time of the hearing, Huntley had already agreed that he was liable to pay restitution, leaving only the amount of that obligation for the district court to determine.  As we note above, Huntley *admitted liability* for restitution in his plea agreement.  And the district court accepted the plea agreement after finding that Huntley understood its terms and that his plea was knowing, intelligent, and entered without undue influence or coercion.

¶ 21 True, the prosecutor told the court that she was "asking that restitution be reserved." But in context, we don't view that statement as reserving the entire issue of restitution. To the contrary, the next thing she said was that Huntley "is admitting liability for that restitution."

¶ 22 Moreover, the record also shows that Huntley used his forthcoming restitution obligation to advocate for a probationary sentence, which the district court eventually imposed. Specifically, later in the hearing, his counsel argued that such a sentence was appropriate in part because "there [was] a huge bill that [was] going to be paid at the end of this case that [Huntley] owes to the victim and his family, and the only way [that was] going to get paid back [was] through [Huntley] working and paying them back."

¶ 23 It's also true that the district court later said that it was "reserv[ing] restitution for a period of [ninety-one] days," without specifying that it was only reserving the amount of Huntley's restitution obligation. And the mittimus the court issued after sentencing simply noted "restitution reserved."

¶ 24 But the court also gave the prosecutor ninety-one days to submit her restitution request. This is important for two reasons.

11

First, it would have made little sense for the court to require a motion seeking an order for assignment of liability given that Huntley had just submitted a plea agreement admitting liability, the prosecutor had brought that admission to the court's attention, and his counsel had referred to the amount he owed the family. Second, we note that the ninety-one-day deadline the court referred to only appears in subsection (1)(b) of section 18-1.3-603, which applies only when the court has assigned liability but defers determination of the amount of restitution. And the court's ruling included no language suggesting that it was entering any of the three other orders allowed under the statute. *See Weeks*, ¶ 7 n.4 (When making express findings of extenuating circumstances to extend the prosecution's deadline and express findings of good cause to extend the court's deadline, "talismanic incantations" aren't necessary, and "substance controls over form.").

¶ 25 To be sure, the better practice would have been for the district court to explicitly state that Huntley was liable for restitution and that the court was only reserving the question of how much restitution he must pay. But we also recognize that the court didn't have the benefit of *Weeks*, which drew clearer lines around the

12

procedures a district court must follow when entering a restitution order under section 18-1.3-603(1)(b).

¶ 26    In any event, after considering the district court's ruling in light of the whole record, we conclude that the court accepted Huntley's admission of liability to pay restitution and deferred only determination of the specific amount he owed for ninety-one days. *See Sanoff*, 187 P.3d at 578. Huntley's argument that his 2014 sentence is illegal because the district court reserved the issue of restitution in its entirety therefore fails.

### D. Huntley's Remaining Challenges to the Restitution Order Are Properly Construed as Illegal Manner Claims

¶ 27    Huntley also contends that the restitution order must be vacated because (1) the prosecutor failed to submit the information in support of her restitution request before or at sentencing, even though that information was already available or could easily have been obtained had the prosecutor exercised due diligence; and (2) the district court determined the amount of restitution 118 days after Huntley's sentencing without extending the statutory deadline for good cause in advance of its expiration. *See Weeks*, ¶¶ 4-5, 30-31, 39.

¶ 28     Huntley argued in the postconviction court — and does so on appeal — that because these infirmities rendered his sentence illegal, he was entitled to postconviction relief under Crim. P. 35(a), and that his motion could be brought at any time. But in determining the nature of postconviction relief sought, we look at the substance of the claim made, not the way it's designated in the motion. *See People v. Knoeppchen*, 2019 COA 34, ¶¶ 7, 27 (considering the substance of the defendant's postconviction challenge to the restitution order to conclude that his challenge was cognizable as an illegal manner claim), *overruled on other grounds by Weeks*, ¶ 47 n.16. Accordingly, we must determine whether Huntley's challenges to the timeliness of the prosecution's request for a specific amount of restitution and the district court's determination of that amount constitute illegal sentence claims or illegal manner claims.

¶ 29     In arguing that his challenges are illegal sentence claims that may be raised at any time, Huntley relies on *Weeks* and contends that "where either the prosecution or the court fails to abide by the deadlines in the restitution statute, any subsequent restitution is entered without authority and must be vacated." Specifically, he

14

directs us to the supreme court's statement that a district court "lack[s] authority" to order restitution more than ninety-one days after the judgment of conviction enters absent an express good cause finding to extend the deadline. *Weeks*, ¶ 45.

¶ 30 The People agree with that proposition to the extent that the court determined the amount of restitution outside the ninety-one-day deadline without making a finding of good cause. But they argue that these claims are only cognizable as illegal manner claims. We agree and conclude that Huntley's claims are properly construed as illegal manner claims.

¶ 31 Huntley's challenges don't pertain to a component of his sentence. While Crim. P. 32(b)(1) provides that a district court "shall consider restitution" when imposing sentence, the Colorado Supreme Court has observed that section 18-1.3-603(1)(b) "clearly distinguishes an order assigning liability for restitution from a determination of the amount of restitution for which the defendant is liable." *Sanoff*, 187 P.3d at 578. By requiring that a judgment of conviction need only include a determination of whether the defendant is liable for restitution, the *Sanoff* court stated, "the General Assembly has made clear its intent that the amount of the

defendant's liability no longer be a required component of a final judgment of conviction." *Id.* Accordingly, the court said, when a district court orders a defendant liable to pay restitution, the restitution component of the defendant's sentence is satisfied and the sentence, and therefore the judgment of conviction, becomes a final, appealable order upon issuance of the mittimus. *Id.* at 579. "Neither subsequent proceedings to determine, nor an order assessing, a specific amount of restitution directly affects that judgment." *Id.* at 578. Instead, the order fixing the amount of restitution is a separate final, appealable order distinct from the defendant's judgment of conviction. *Id.*

¶ 32 A division of this court applied *Sanoff*'s reasoning in addressing a defendant's claim that his postconviction *Weeks*-based challenge was properly construed as an illegal sentence claim because his sentence wasn't authorized by law. *See People v. Tennyson*, 2023 COA 2, ¶¶ 15-16 (*cert. granted* Sept. 11, 2023). The defendant in that case, like Huntley here, argued that his sentence was illegal because the district court had *no authority* to fix the amount of restitution after the expiration of the ninety-one-day deadline for making that determination. *Id.* at ¶ 16.

16

The division disagreed and held that where a defendant brings a postconviction challenge regarding the procedures employed in determining the amount of restitution, the claim is cognizable as an illegal manner claim. *Id.* at ¶ 33. The court reasoned that "[b]ecause the amount of restitution is not a component of a defendant's sentence, any procedural deficiency in determining the amount cannot implicate the legality of the restitution component of the defendant's sentence." *Id.*

¶ 33    We agree with the *Tennyson* division on this point, and the distinction between *liability for* and the *amount of* restitution is applicable here. Any proceedings after the 2014 sentencing were distinct from, and didn't affect, the sentence component of Huntley's judgment of conviction. *See Sanoff*, 187 P.3d at 578. Considering that Huntley's challenges relate to the proceedings for determining the amount of his restitution obligation, they don't implicate the legality of a component of his 2014 sentence. *See id.* at 578-79; *Fransua v. People*, 2019 CO 96, ¶ 12 ("Rule 35(a) claims that a sentence is 'not authorized by law' are appropriate only where a defendant is challenging the legality of some component of a sentence." (quoting *Baker*, ¶ 19)); *see also Baker*, ¶ 19 (concluding

17

that because PSCC is not part of a sentence, a challenge to the amount of PSCC noted in the mittimus doesn't constitute an illegal sentence claim).

¶ 34    In arguing otherwise, Huntley directs us to cases holding that when a restitution award includes amounts not authorized by law, the defendant has an illegal sentence claim. *See People v. Suttmiller*, 240 P.3d 504, 507 (Colo. App. 2010) (noting that a defendant asserted a cognizable illegal sentence claim when the defendant argued that the amount of restitution was improper because it included a rental value of an item that the victim never rented); *Roberts v. People*, 130 P.3d 1005, 1007 n.2 (Colo. 2006) (noting that whether a district court may award prejudgment interest on the amount of restitution implicates the legality of a sentence because it's an issue of whether the prejudgment interest is authorized by statute); *People v. Brooks*, 250 P.3d 771, 772-73 (Colo. App. 2010) (concluding that the defendant's sentence was illegal because the restitution order included amounts from an unrelated juvenile delinquency case).

¶ 35    But unlike the defendants in *Suttmiller*, *Roberts*, and *Brooks*, Huntley doesn't argue that the restitution order is improper

because it includes amounts that are not authorized by law. Rather, he asserts that he doesn't owe any amount of restitution because the prosecution and the district court failed to comply with their respective statutory deadlines when calculating the amount. In essence, then, Huntley challenges the *procedure* that preceded the district court's determination of the amount he must pay to the victims. A challenge to the procedure used to reach a restitution amount is an illegal manner claim, not an illegal sentence claim.[2] *See Bowerman*, 258 P.3d at 317 (the claim that the prosecution failed to prove that the defendant proximately caused certain losses was an illegal manner claim when the defendant argued "that the

---

[2] We recognize that the supreme court has noted, as Huntley points out, that illegal sentence claims can encompass a wide range of different factual circumstances, including when "the restitution imposed was either not permitted or was in the wrong amount." *Hunsaker v. People*, 2021 CO 83, ¶ 19. But *Hunsaker* doesn't help Huntley for two reasons. First, the supreme court's fleeting reference to the restitution statute is dicta because that case involved a different issue (i.e., the scope of the rule providing that correction of an illegal sentence renews a defendant's deadline for pursuing a subsequent collateral attack that is related to the illegality). *See id.* at ¶¶ 8-12; *see also Main Elec., Ltd. v. Printz Servs. Corp.*, 980 P.2d 522, 526 n.2 (Colo. 1999) ("Dictum is not the law of the case and is not controlling precedent."). Second, in making the quoted statement, *Hunsaker* cited *People v. Brooks*, 250 P.3d 771 (Colo. App. 2010), which is distinguishable here for the reasons stated above.

trial court did not comply with one or more of the statutory and procedural considerations governing restitution hearings").

¶ 36    In sum, we conclude that Huntley's challenges to the timeliness of the prosecution's request for a specific amount of restitution and the district court's determination of that amount are cognizable as illegal manner claims, not as illegal sentence claims.

E.    Huntley's Illegal Manner Claims Are Time Barred

¶ 37    Having determined that Huntley's challenges to the timing of the prosecutor's submission and the district court's decision are properly construed as illegal manner claims, we next consider whether he timely asserted those claims. Huntley contends that his claims are not time barred because he filed his motion for postconviction relief 125 days after the mandate issued in *Huntley I.* In the alternative, Huntley argues that even if the 126-day deadline for filing of his illegal manner restitution claims didn't start with the issuance of the mandate, the district court's determination of PSCC on remand from *Huntley I* "corrected a separate illegality," renewing his deadline for bringing the claims. We're not persuaded by either argument.

¶ 38    For starters, we disagree with Huntley's argument that his 126-day deadline started to run when the mandate in *Huntley I* issued because "*any* appellate mandate affirming the conviction or sentence revives" that deadline.  In that case, he directly appealed, and a division of this court affirmed, his five-year DOC sentence after the district court revoked his probation.  *Huntley I*, No. 19CA1119, slip op. at ¶ 1.  However, Huntley's motion for postconviction relief doesn't challenge that separate sentence resulting from his revocation; rather, his only claim is that the district court erred when it entered the restitution order in connection with his 2014 judgment of conviction.

¶ 39    The amount of Huntley's restitution obligation became a final, appealable order in January 2015 after the district court determined the amount he owed.  In the absence of a direct appeal, Huntley's deadline for filing a collateral challenge to the manner in which restitution was imposed started to run after the district court entered the restitution order.  *See* Crim. P. 35(b)(1); *People v. Dist. Ct.*, 638 P.2d 65, 67 (Colo. 1981) (noting that a motion under Rule 35(b) must be filed within the deadline "after the sentence is imposed *unless* an appeal has been filed") (emphasis added); *People*

*v. Lyons*, 618 P.2d 673, 675 (Colo. App. 1980) ("For purposes of [Rule 35(b)], a conviction is final 12[6] days after the imposition of [a] sentence when that conviction is not appealed, and 12[6] days after the conclusion of the appellate process if the conviction or sentence is directly appealed."). Huntley's motion challenging the restitution order as being entered in an illegal manner, filed seven and a half years after the order entered, is therefore untimely.

¶ 40    We're not persuaded otherwise by Huntley's alternative argument that the 126-day deadline was renewed when the district court determined on remand the amount of PSCC to which he was entitled. Relying on the rule that a defendant may pursue an otherwise time-barred collateral attack on the conviction when a district court corrects an illegal sentence, *see Hunsaker v. People*, 2021 CO 83, ¶ 3, Huntley argues that the district court here removed an illegality in his sentence when it calculated the correct amount of his PSCC. We disagree for two reasons.

¶ 41    First, as Huntley concedes, a challenge to the amount of PSCC is *only* cognizable as an illegal manner claim because PSCC is not a component of a defendant's sentence. *See Baker*, ¶ 19. Accordingly, the district court's correction of Huntley's PSCC didn't

constitute removal of an illegality in his sentence renewing his 126-day deadline for asserting the illegal manner claims. *See Hunsaker*, ¶ 20 ("The correction of an illegal sentence pursuant to Crim. P. 35(a) restarts the clock for purposes of [Crim. P.] 35(b)."). Second, even if we were to assume otherwise, Huntley's argument reads *Hunsaker* too broadly. There, the supreme court said that a "defendant who successfully corrects an illegal sentence may thereafter collaterally attack their conviction, but they may only raise arguments addressing how the illegality in the sentence potentially affected the original conviction." *Id.* at ¶ 26. Huntley doesn't explain, and we don't see, how the corrected PSCC relates to his challenge to the restitution order from roughly ten years ago.

¶ 42 For the foregoing reasons, we conclude that Huntley's challenges to the manner in which the district court ordered him to pay restitution are time barred. Accordingly, we affirm the order denying his motion for postconviction relief, though on different grounds than the postconviction court. *See People v. Cooper*, 2023 COA 113, ¶ 7 ("We may affirm the postconviction court's ruling on any ground supported by the record, whether or not the postconviction court relied on or considered that ground.").

### III.  Correction of the Mittimus

¶ 43     The mittimus the district court issued after determining the amount of Huntley's PSCC, dated March 3, 2022, states that he was sentenced on December 10, 2021.  However, as the parties point out, that date is incorrect because the court resentenced Huntley on April 29, 2019.  Moreover, even though the district court ordered restitution at the 2014 sentencing and later determined the amount owed, it didn't include the amount of restitution on the mittimus.  The amended mittimus still reflects "restitution reserved."  Accordingly, we remand the case to the district court to amend the mittimus to reflect the correct date of Huntley's resentencing and the amount of his restitution obligation.  *See Weeks*, ¶ 9 (stating that the mittimus should reflect that restitution has been ordered and the amount due); Crim. P. 36 ("Clerical mistakes in judgments, orders, or other parts of the record . . . arising from oversight or omission may be corrected by the court at any time . . . .").

### IV.  Disposition

¶ 44     The order is affirmed, and the case is remanded for correction of the mittimus.

JUDGE WELLING concurs.

JUDGE SCHUTZ dissents.

JUDGE SCHUTZ, dissenting.

¶ 45    The sentencing court was required to make an express finding at sentencing that defendant, Thomas Andrew Huntley, was obligated to pay restitution with the amount to be determined later, or an alternative order authorized by section 18-1.3-603(1)(a) to (d), C.R.S. 2024. Because I conclude that the court failed to do so, the court's sentence was illegal and it had no authority to order Huntley to pay restitution 118 days after the sentence was originally imposed. Therefore, I respectfully dissent.

## I.    The Controlling Law

¶ 46    The district court was obligated to enter, at the time of sentencing, an order meeting one of the four conditions of section 18-1.3-603(1)(a) to (d):

> (1) Every order of conviction of a felony . . . shall include consideration of restitution. *Each such order shall include one or more of the following*:
>
> (a) An order of a specific amount of restitution be paid by the defendant;
>
> (b) *An order that the defendant is obligated to pay restitution, but that the specific amount of restitution shall be determined within the ninety-one days immediately following the order of conviction,* unless good cause is shown for

extending the time period by which the
restitution amount shall be determined;

(c) An order, in addition to or in place of a
specific amount of restitution, that the
defendant pay restitution covering the actual
costs of specific future treatment of any victim
of the crime; or

(d) Contain a specific finding that no victim of
the crime suffered a pecuniary loss and
therefore no order for the payment of
restitution is being entered.

(Emphasis added.)

¶ 47    The deadlines imposed on the court under subsection (1)(b)

may not be extended by an untimely request for more time, or by an

untimely finding of good cause to extend the deadlines. *People v.*

*Weeks*, 2021 CO 75, ¶ 7 ("[N]either a belated request for more time

to determine the proposed amount of restitution nor an order

granting such a request may act as a defibrillator to resuscitate an

expired deadline."). "Rather, each deadline requires an express

finding — one relating to extenuating circumstances affecting the

prosecution's ability to determine the proposed amount of

restitution and the other relating to good cause for extending the

court's deadline to determine the amount of restitution the

defendant must pay." *Id.*

27

> [W]hen the court enters a preliminary restitution order pursuant to subsection (1)(b) at a sentencing hearing, the mittimus should reflect that restitution has been ordered but that the amount will be determined later (either within ninety-one days or within whatever expanded timeframe the court has established based on a finding of good cause).

*Id.* at ¶ 9. If a sentencing court fails to comply with section 18-1.3-603(1)(b), the restitution order must be vacated. *Id.* at ¶ 47.

¶ 48    Adherence to this interpretation of section 18-1.3-603 "has the potential to lead to an undesirable result . . . [because] a defendant could avoid paying restitution solely because the court failed to comply with its deadline under subsection (1)(b)." *Id.* at ¶ 41. But, as the supreme court observed in *Weeks*, a desire to avoid an undesirable result does not justify ignoring the controlling law.

> We infer from the restitution statute that the legislature expects litigants and judges to be prepared to address the issue of restitution at sentencing hearings. *At such a hearing, a judge must enter one or more of four types of restitution orders. Reserving the issue of restitution in its entirety until a later date isn't one of them.*
>
> Imperfect as our restitution statute may be, trial courts have to find a way to adhere to it. Because the trial court in this case violated the ninety-one-day deadline in subsection (1)(b) to

28

> determine the amount of restitution, the
> division correctly vacated the restitution order.

*Id.* at ¶¶ 46-47 (emphasis added).

¶ 49 With these controlling principles in mind, I turn to the facts that lead me to a different result than that reached by my colleagues.

## II. The Controlling Facts

¶ 50 As the majority opinion notes, Huntley entered into a plea agreement. *Supra*, ¶ 3. The plea expressed the parties' agreement that "restitution is reserved in this case . . . . [Huntley] admits liability." The accompanying advisement signed by Huntley and his counsel provided, "I understand that the Court will determine the restitution I must pay, if any. The District Attorney's Office may submit a request for restitution within 90 days of sentencing. If I object to the restitution, a hearing shall be set by the Court."

¶ 51 When presenting the fully executed plea agreement to the court, the prosecutor represented that "[w]e are asking that restitution be reserved on both this case[, 14CR595,] and 13JD282. [Huntley] is admitting liability for that restitution." After hearing from the parties, Huntley's family members, and the victims and

29

their family members, the court proceeded to immediately sentence Huntley.

¶ 52    At the sentencing hearing, the prosecution did not request that the court enter an order finding that Huntley was obligated to pay restitution and did not present any evidence concerning the amount of restitution that it was requesting.  Nor did the prosecution demonstrate good cause for why it was not prepared to address restitution, which was based on losses incurred by the victims prior to the sentencing hearing.  Instead, the prosecutor simply asked, "Is the court reserving restitution?"

¶ 53    The court responded,

> I'll reserve restitution for a period of 91 days.
> That is, you'll have 91 days to submit a
> request for restitution.  If one is submitted, the
> defense would have 14 days to file an
> objection.  If an objection is filed, the Court
> will then direct the matter be set for hearing.
> If no objection is filed, the Court will simply
> issue the order for restitution.

Consistent with this verbal order, the court entered a written mittimus that stated, "Restitution Reserved."

¶ 54    Predictably, given the substance of the sentencing court's order, the prosecution did not submit its request for restitution

30

until seventy-seven days after sentencing, and the court failed to determine the amount of restitution that was owing until 118 days after the sentence was imposed.

### III.   Analysis

¶ 55     At the time of sentencing, the sentencing court failed to fulfill its obligation under section 18-1.3-603(1)(b).  It did not enter an order that Huntley was obligated to pay restitution.  And it made no finding that there was good cause to delay determining the amount of restitution owed.  Instead, the court simply deferred the issue of restitution in its entirety for a period of ninety-one days.  And the court did not resolve the amount of restitution within the ninety-one-day period.  As a consequence, the court did not have the authority to award the restitution that it ultimately imposed on Huntley.  *See Weeks*, ¶ 45.

¶ 56     Despite these authorities, the majority excuses or looks past the sentencing court's omissions on the grounds that Huntley admitted liability for purposes of restitution under the plea agreement.  I reject this conclusion on multiple grounds.  First, a defendant's admission of liability for purpose of restitution is not a finding that restitution is owed or an admission that the defendant

31

is obligated to pay restitution. And, critically, it is no substitute for a court order stating that the defendant is obligated to pay restitution. Moreover, the entry of such an order is neither a defendant's responsibility nor their prerogative. The obligation to enter such an order, along with the corresponding obligation to ensure that restitution is resolved within ninety-one days (absent a timely good cause finding to extend that period), rests solely on the sentencing court's shoulders. The sentencing court here did neither.

¶ 57 Moreover, the plea advisement signed by Huntley and his counsel indicated that if the prosecution submitted a request for restitution, he would have the opportunity to object and the court would then set the restitution issue for a hearing. The advisement also provided that the sentencing court would then "determine the restitution [Huntley] must pay, if any." This advisement indicates that the question of what restitution, if any, Huntley was obligated to pay remained open at the time of sentencing.

¶ 58 The majority opinion attempts to excuse the sentencing court's failure to meet its obligations under section 18-1.3-603(1)(b) based on the fact that this sentence was entered in 2014, seven years

32

before the supreme court issued the *Weeks* decision.  *Supra,* ¶ 25.

But *Weeks* did not create new law.  Rather, the principles

articulated in *Weeks* are dictated by the terms of section

18-1.3-603(1)(a) to (d), which did not materially change between

2014 and 2021.  In other words, *Weeks* does not impose obligations

on prosecutors and trial courts that did not exist in 2014.  To the

contrary, *Weeks* simply reminds sentencing courts and prosecutors

of the duties that the General Assembly imposed upon them when

entering a criminal sentence that involves a claim for restitution.

¶ 59     Nor can the sentencing court's omissions be excused based

upon this court's subsequent conclusion that an explicit order of

restitution was either not required or can be implied from the

surrounding circumstances.  *Weeks,* ¶ 7.  Rather, the obligation

imposed by section 18-1.3-603(1)(b) requires the sentencing court

to make a timely "express finding."  *Id.*

¶ 60     Because the sentencing court failed to enter an order

complying with section 18-1.3-603(1)(a) to (d) at the time sentence

was imposed, the sentence was illegal, and it may be corrected at

any time.  Crim. P. 35(a) (an illegal sentence may be corrected at

any time); *People v. Bowerman,* 258 P.3d 314, 316 (Colo. App. 2010)

("Section 18-1.3-603 . . . mandates that, after every felony conviction, trial courts must answer the question whether the defendant should pay the victim restitution. The failure to make this necessary finding results in an illegal sentence."); *see also People v. Tennyson*, 2023 COA 2, ¶ 31 ("Divisions of this court have concluded that a district court imposes an illegal sentence if it fails to consider restitution when imposing sentence.") (*cert. granted* Sept. 11, 2023).

¶ 61    The Colorado Supreme Court granted certiorari in *Tennyson* to review the following issue: "Whether a postconviction challenge to the timeliness of a restitution order is cognizable as an illegal sentence claim under Crim. P. 35(a)." *Tennyson v. People*, No. 23SC168, 2023 WL 5944725 (Colo. Sept. 11, 2023) (unpublished order). The decision in that case will likely have a significant impact on the resolution of this case. If the supreme court concludes that the failure to impose a section 18-1.3-603(1)(b) order is not actionable as an illegal sentence claim under Crim. P. 35(a), then Huntley's appeal was properly dismissed as untimely, as the majority opinion concludes. In such case, the concerns that underlie this dissent will be obsolete. On the other hand, if the

court determines that the failure to enter a section 18-1.3-603(1)(b) compliant order is actionable as an illegal sentence claim, then the supreme court is likely to provide guidance on what is the appropriate remedy for such a violation.

¶ 62    Given these dynamics, judicial restraint leads me to refrain from opining on what the appropriate remedy is for a sentencing court's failure to enter an order at sentencing that a defendant is obligated to pay restitution, or an alternative order authorized by section 18-1.3-603(1)(a) to (d).

## IV.   Conclusion

¶ 63    For the stated reasons, I respectfully dissent.