1
 2025 CO 31 Audrey Lee Tennyson, Petitioner v. The People of the State of Colorado, Respondent No. 23SC168
Supreme Court of Colorado, En Banc
May 27, 2025
 2
 
          
 Certiorari to the Colorado Court of Appeals Court of Appeals
 Case No. 20CA646.
 
 
          
 Attorneys for Petitioner: Megan A. Ring, Public Defender Lisa
 Weisz, Deputy Public Defender Denver, Colorado.
 
 
          
 Attorneys for Respondent: Philip J. Weiser, Attorney General
 Frank R. Lawson, Assistant Attorney General Denver, Colorado.
 
 
          
 Attorneys for Amicus Curiae Office of the Alternate Defense
 Counsel: Gibson, Dunn & Crutcher LLP John Partridge Al
 Kelly Nicholas Venable.Denver, Colorado.
 
 3
 
           Amicus
 Curiae Tnias D. Pike, pro se Buena Vista, Colorado.
 
 
          
 JUSTICE SAMOUR delivered the Opinion of the Court, in which
 CHIEF JUSTICE MÁRQUEZ, JUSTICE BOATRIGHT, JUSTICE
 HOOD, JUSTICE HART, and JUSTICE BERKENKOTTER joined. JUSTICE
 GABRIEL dissented.
 
 
          
 OPINION
 
 4
 
          
 SAMOUR, JUSTICE.
 
 
          ¶1
 Under Colorado law, with one rare exception, every sentence
 in a criminal case must include consideration of
 restitution.[1] See § 18-1.3-603(1), C.R.S.
 (2024); Crim. P. 32(b)(3)(I). Specifically, our legislature
 has mandated that every sentence must include at least one of
 four statutorily enumerated restitution orders: (1) an order
 requiring payment of an amount of restitution; (2) an order
 obligating the defendant to pay restitution but indicating
 that the amount of restitution will be determined within
 ninety-one days or, upon an express finding of good cause,
 within a longer timeframe set by the trial court; (3) an
 order, in addition to or in place of an order requiring
 payment of an amount of restitution, directing the defendant
 to pay restitution covering the actual costs of future
 treatment for any victim; or (4) an order stating that no
 restitution payment is required because no victim suffered a
 pecuniary loss. § 18-1.3-603(1)(a)-(d).
 
 
          ¶2
 We now reaffirm that a sentence that fails to include at
 least one of these four restitution orders violates section
 18-1.3-603(1) ("subsection (1)") and is a
 
 5
 
 sentence not authorized by law that may be corrected at any
 time. See Crim. P. 35(a) ("The court may
 correct a sentence that was not authorized by law or that was
 imposed without jurisdiction at any time . . . .").
 Because an order entered during a sentencing
 hearing[2] simply deferring until a later date the
 matter of restitution in its entirety (i.e., deferring both
 whether the defendant is liable to pay restitution, and if
 so, the amount of restitution due) is not one of the orders
 listed in subsection (1), a sentence that addresses
 restitution through such an order is a sentence that is not
 authorized by law.
 
 
          ¶3
 This case presents a more nuanced issue, however. Pursuant to
 section 18-1.3-603(1)(b) ("subsection (1)(b)"), the
 district court imposed a sentence that implicitly obligated
 the defendant, Audrey Lee Tennyson, to pay restitution and
 postponed the determination of the amount of restitution
 until a later date. The court, though, subsequently failed to
 set the amount of restitution within the applicable deadline
 in subsection (1)(b)-ninety days or, upon a timely and
 express finding of good cause, any longer timeframe set by
 the court (the "subsection (1)(b)
 deadline").[3] Ten years later, Tennyson brought a Crim.
 P. 35(a)
 
 6
 
 claim arguing that he received an illegal sentence that may
 be corrected at any time and that the only way to correct it
 was by vacating the restitution order and entering in its
 place an order specifying that no restitution was due. The
 question for us is whether Tennyson's Crim. P. 35(a)
 claim is an "illegal sentence claim" challenging
 the legality of his sentence or an "illegal manner
 claim" challenging the legality of the manner in which
 his sentence was imposed.
 
 
          ¶4
 The answer is consequential. If the district court's
 failure to comply with the subsection (1)(b) deadline
 rendered Tennyson's sentence illegal, the court could
 correct it at any time. But if the court's violation of
 the subsection (1)(b) deadline meant that Tennyson's
 sentence was imposed in an illegal manner, the court could
 only correct it within 120 days after his sentence was
 imposed. See Crim. P. 35(a)-(b).[4] To resolve the
 question, we must review both our Crim. P. 35(a)
 jurisprudence and our restitution jurisprudence.
 
 
          ¶5
 First, Crim. P. 35(a). In People v. Baker, 2019 CO
 97M, ¶ 1, 452 P.3d 759, 760, we were called upon to
 decide whether a claim seeking more presentence confinement
 credit ("PSCC") than originally granted was a claim
 that the prison sentence imposed was "not authorized by
 law" and was thus illegal under Crim.
 
 7
 
 P. 35(a). We held that it could not be an illegal sentence
 claim because "PSCC is not a component of a
 sentence." Baker, ¶ 1, 452 P.3d at 760. We
 acknowledged, however, that a claim challenging the trial
 court's calculation of PSCC could be brought pursuant to
 Crim. P. 35(a) as an illegal manner claim. Baker,
 ¶ 20, 452 P.3d at 763.
 
 
          ¶6
 Second, restitution. In Sanoff v. People, 187 P.3d
 576, 579 (Colo. 2008), we held that a restitution order
 issued at sentencing pursuant to subsection (1)(b) that
 merely required the defendant to pay restitution and
 indicated that the amount due would be determined later
 sufficed to satisfy the restitution component of the
 sentence. We reasoned that, "by express legislative
 action, a subsequent determination of the amount of
 restitution . . ., as distinguished from an order simply
 finding [the defendant] liable to pay restitution, has been
 severed from the meaning of the term 'sentence,' as
 contemplated by Crim. P. 32, and therefore from [the]
 judgment of conviction." Sanoff, 187 P.3d at
 578.
 
 
          ¶7
 Guided by Sanoff, we conclude that the order setting
 the amount of restitution owed by Tennyson is not part of his
 sentence or of his judgment of conviction. And guided by
 Baker, we conclude that Tennyson's Crim. P.
 35(a) claim challenging the timeliness of the order setting
 the amount of restitution is an illegal manner claim, not an
 illegal sentence claim. As such, he was required to bring it
 within 120 days after his sentence was imposed. Because he
 did not, his
 
 8
 
 Crim. P. 35(a) claim is time-barred. And because the court of
 appeals reached the same conclusion, we affirm its judgment.
 
 
          I.
 Facts and Procedural History
 
 
          ¶8
 In the summer of 2007, Tennyson committed a series of
 robberies. He was subsequently charged with fifty counts in
 this case. The prosecution and Tennyson eventually reached a
 global disposition: He pleaded guilty to two counts of
 aggravated robbery, and in exchange, the prosecution agreed
 to a sentencing range on each count of ten to thirty-two
 years in the Department of Corrections ("DOC"),
 which he would serve concurrently with each other and with
 the sentences in three other felony cases in which he was
 facing complaints to revoke his probation.
 
 
          ¶9
 Tennyson stipulated in the plea agreement that there was
 restitution and that he was liable for it. Specifically, the
 plea agreement obligated him to pay restitution "to all
 victims in all pending counts and cases governed by this plea
 agreement, including all counts to be dismissed."
 Further, the plea agreement stated that the prosecution would
 "act in good faith to provide correct information
 establishing the amount of restitution within [ninety]
 days of sentencing." (Emphasis added.) Following
 Tennyson's guilty pleas at the providency hearing, the
 court scheduled all four cases for sentencing.¶10 During
 the sentencing hearing, the prosecutor argued for prison
 sentences within the agreed-upon sentencing ranges,
 specifically asked for restitution, and then requested that
 restitution be "[r]eserve[d] for [ninety] days."
 Consistent with the plea agreement, the court imposed prison
 sentences of twenty-six years on each of the two aggravated
 robbery counts, to run concurrently with each other and with
 the shorter prison sentences imposed in the three
 probation-revocation cases. The court then gave the
 prosecution "[ninety] days to determine," not
 whether there would be restitution, but rather "what
 restitution is due and owing." (Emphasis added.) It
 further granted Tennyson "[thirty] days to challenge if
 [he] believe[d] the figure [was] in
 error."[5] (Emphasis added.) Like the division, we
 infer from the record-particularly from the terms of the plea
 agreement and the exchange between the court and the
 prosecution at the sentencing hearing-that the court found
 Tennyson liable for restitution but deferred until after
 sentencing the determination of the amount of restitution.
 
 
          ¶11
 Eighty-six days after the sentencing hearing, the prosecution
 timely submitted a proposed restitution order setting forth
 the requested amount of
 
 9
 
 restitution ($12,306.18). Tennyson lodged no objection, and
 the district court granted the proposed order 136 days after
 sentencing. Despite approving the proposed restitution
 amount, the court gave Tennyson ten additional days to file
 an objection. Although Tennyson did not file an objection
 within that timeframe, the prosecution filed an amended
 proposed order on the tenth day. The amended proposed order
 simply corrected an arithmetic error in the calculation of
 the amount of restitution due: $12,684.96 instead of
 $12,306.18.[6] The court signed the amended proposed
 order 155 days after sentencing but again gave Tennyson ten
 days to object to it. Tennyson did not file a timely
 objection this time either.
 
 
          ¶12
 Tennyson did not appeal his sentence or judgment of
 conviction. He did, however, file numerous postconviction
 claims and appeals challenging the rulings on some of those
 claims. None of those claims or appeals are relevant to our
 analysis, so we omit any discussion of them.
 
 
          ¶13
 In 2015, approximately seven years after his sentencing
 hearing, Tennyson wrote a letter to the district court
 contending that the restitution order had not been served on
 him and objecting to the restitution amount. The court denied
 this objection as untimely.
 
 10
 
          ¶14
 About three years later (some ten years after his sentence
 was imposed), Tennyson brought additional postconviction
 claims, including the Crim. P. 35(a) claim before us. As
 relevant here, he argued that his sentence was illegal
 because there was no evidence that the prosecution needed
 additional time after sentencing to calculate the amount of
 restitution ultimately requested. The district court
 disagreed, explaining that it was customary to afford the
 prosecution ninety days after sentencing to calculate the
 amount of restitution sought because the prosecution rarely
 has that information at the time of sentencing.
 
 
          ¶15
 Tennyson appealed. While his case was pending on appeal, we
 announced our decision in People v. Weeks, 2021 CO
 75, ¶¶ 45-47, 498 P.3d 142, 157, where, as relevant
 here, we (1) held that when a trial court enters a subsection
 (1)(b) order finding restitution liability at sentencing, it
 loses authority to require restitution if it fails to set the
 amount due within the subsection (1)(b) deadline; and (2)
 concluded that vacatur of the restitution order was the
 appropriate remedy for the trial court's failure to
 determine the amount of restitution within the subsection
 (1)(b) deadline.
 
 
          ¶16
 Relying on Weeks, Tennyson argued at the court of
 appeals that his sentence was illegal because the district
 court had lacked authority to enter the order setting the
 amount of restitution after the subsection (1)(b) deadline
 expired. And, according to Tennyson, the remedy required by
 Weeks to correct his sentence was
 
 11
 
 vacatur of the restitution order and entry of an order
 indicating he owed no restitution.
 
 
          ¶17
 In a published opinion, a unanimous division of the court of
 appeals disagreed and affirmed the district court's
 orders denying Tennyson's postconviction claims.
 People v. Tennyson, 2023 COA 2, ¶ 2, 528 P.3d
 185, 187-88. As pertinent here, the division concluded that:
 (1) under this court's case law, when a trial court
 enters a subsection (1)(b) order, the "liability"
 component is distinct and separate from the
 "amount" component; and (2) Weeks simply
 set forth the procedural manner in which the
 restitution amount must be determined after sentencing under
 subsection (1)(b). Id. at ¶ 17, 528 P.3d at
 189. Because the division discerned that the amount of
 restitution was not part of Tennyson's sentence, it ruled
 that his challenge to the timeliness of the post-sentencing
 order setting the amount of restitution was an illegal manner
 claim, not an illegal sentence claim. Id. And since
 Tennyson failed to bring his claim within 120 days after his
 sentence was imposed, the division determined that the claim
 was time-barred. Id. at ¶ 38, 528 P.3d at 192.
 
 
          ¶18
 Tennyson thereafter sought our review, and we granted his
 petition. We agreed to consider the single issue he raised:
 "Whether a postconviction challenge to the timeliness of
 a restitution order is cognizable as an illegal sentence
 claim under Crim. P. 35(a)." Given what occurred here,
 we understand the issue to refer
 
 12
 
 to a Crim. P. 35(a) challenge to the timeliness of a
 post-sentencing determination of the amount of restitution
 following a sentencing hearing during which the court finds
 restitution liability.[7]
 
 
          II.
 Analysis
 
 
          ¶19
 Before analyzing the issue raised by Tennyson, we set forth
 the standard of review. We then consider the case law
 applying Crim. P. 35(a) and differentiating between illegal
 sentence claims and illegal manner claims. With these
 precedents in mind, we turn to Colorado law governing
 restitution in criminal cases-focusing specifically on
 subsection (1)(b) restitution orders. We end by applying the
 principles of law discussed to determine whether the district
 court's untimely determination of the amount of
 restitution rendered Tennyson's sentence illegal. We rule
 that it did not and therefore conclude that the Crim. P.
 35(a) claim brought by Tennyson was an illegal manner claim
 that should have been brought within 120 days after
 sentencing.
 
 
          A.
 Standard of Review
 
 
          ¶20
 Subject to constitutional limitations, "it is the
 prerogative of the legislature to . . . prescribe
 sentences." Sanoff, 187 P.3d at 577. Our
 General Assembly has
 
 13
 
 long required that every criminal sentence reflect
 consideration of restitution. Id. Restitution orders
 in criminal prosecutions in this jurisdiction are governed by
 statute and rule. See § 18-1.3-603; Crim. P.
 32(b)(1) ("When imposing sentence, the court shall
 consider restitution as required by section 18-1.3-603(1),
 C.R.S."); Crim. P. 32(b)(3)(I) (indicating that
 "[a] judgment of conviction" must include "an
 order or finding regarding restitution as required by section
 18-1.3-603, C.R.S.").
 
 
          ¶21
 Questions of statutory interpretation are questions of law,
 which we review de novo. Weeks, ¶ 24, 498 P.3d
 at 151. In construing a statute, our goal is to give effect
 to the legislature's intent. Id. at ¶ 25,
 498 P.3d at 151. The first step in this endeavor is to give
 the statute's "words and phrases their plain and
 ordinary meaning." Id. (quoting McCulley v.
 People, 2020 CO 40, ¶ 10, 463 P.3d 254, 257). We
 "presume that a legislature says in a statute what it
 means and means in a statute what it says there."
 Id. (quoting Conn. Nat'l Bank v.
 Germain, 503 U.S. 249, 253-54 (1992)). Consequently, if
 a statute is unambiguous, we apply it as written without
 resorting to tools of statutory construction. Baker,
 ¶ 13, 452 P.3d at 762.
 
 
          ¶22
 The same principles that apply to statutory interpretation
 apply when we construe our rules of criminal procedure, which
 we have plenary authority to promulgate and interpret.
 Id. at ¶ 14, 452 P.3d at 762. Just as with
 questions of statutory interpretation, questions of rule
 interpretation are legal in nature and
 
 14
 
 subject to de novo review. Hunsaker v. People, 2021
 CO 83, ¶ 16, 500 P.3d 1110, 1114 (relying on People
 v. Bueno, 2018 CO 4, ¶ 18, 409 P.3d 320, 325).
 
 
          ¶23
 We also review de novo the legality of a sentence. Veith
 v. People, 2017 CO 19, ¶ 12, 390 P.3d 403, 406.
 Thus, the denial of a Crim. P. 35(a) claim asserting that a
 sentence was either not authorized by statute or imposed
 without jurisdiction presents a question of law subject to de
 novo review.
 
 
          B.
 Crim. P. 35(a)-Illegal Sentence Claims vs. Illegal Manner
 Claims
 
 
          ¶24
 Crim. P. 35(a) allows a defendant in a criminal case to file
 a postconviction claim (1) to "correct a sentence that
 was not authorized by law or that was imposed without
 jurisdiction" or (2) to "correct a sentence imposed
 in an illegal manner." The former is an illegal sentence
 claim; the latter is an illegal manner claim. We explore in
 some depth each type of claim.
 
 
          ¶25
 We have made clear that an illegal sentence includes a
 sentence that is not authorized by law because it fails to
 comply in full with statutory requirements.
 Delgado v. People, 105 P.3d 634, 636 (Colo. 2005);
 see also People v. Collier, 151 P.3d 668, 670
 (Colo.App. 2006) (observing that a sentence is illegal if
 "it is inconsistent with the statutory scheme outlined
 by the legislature"). For example, in Chae v.
 People, 780 P.2d 481, 484 (Colo. 1989), we held that a
 suspended term of incarceration in the DOC constituted an
 illegal sentence because, although the imposition of the DOC
 sentence itself was legal, its suspension was not. Later, in
 
 15
 
 Craig v. People, 986 P.2d 951, 960 (Colo. 1999), we
 decided that "any plea agreement purporting to
 eliminate, waive, modify or direct the trial court's
 application of parole in a way not available under the
 sentencing law would call for an illegal sentence of the sort
 rejected in Chae." Thus, it is a fundamental
 tenet in this state that, "as long as any aspect of a
 sentence is inconsistent with statutory requirements, the
 complete sentence is illegal." Delgado, 105
 P.3d at 637.
 
 
          ¶26
 A claim that a sentence is not authorized by law can
 encompass a wide range of situations, including, for example:
 when a court orders sentences to run concurrently, even
 though a statute requires them to run consecutively,
 People v. White, 179 P.3d 58, 60 (Colo.App. 2007);
 when a court orders mandatory parole in contravention of a
 statute requiring discretionary parole, Hunsaker,
 ¶ 19, 500 P.3d at 1114; or when a court imposes a prison
 sentence longer than the maximum term permitted by the
 governing statute, id. Depending on the nature of
 the illegality involved, some sentences that are not
 authorized by law "can be corrected through resentencing
 and imposition of a legal sentence while other illegal
 sentences require that the judgment of conviction be
 vacated." Id. (quoting Delgado, 105
 P.3d at 637).
 
 
          ¶27
 A sentence imposed without jurisdiction is also an illegal
 sentence. "a court's 'jurisdiction' concerns
 its 'power to entertain and to render a judgment on a
 particular claim.'" People in Int. of J.W. v.
 C.O., 2017 CO 105, ¶ 21, 406 P.3d 853, 858
 
 16
 
 (quoting In re Estate of Ongaro, 998 P.2d 1097, 1103
 (Colo. 2000)). Jurisdiction consists of two elements: subject
 matter jurisdiction, which refers to a "court's
 authority to deal with the class of cases,"
 People v. Sprinkle, 2021 CO 60, ¶ 15, 489 P.3d
 1242, 1245 (quoting C.O., ¶ 24, 406 P.3d at
 858); and personal jurisdiction, which refers to a
 court's power over the parties, C.O., ¶ 22,
 406 P.3d at 858.
 
 
          ¶28
 The Colorado Constitution confers general subject matter
 jurisdiction on district courts, so unless otherwise
 provided, they have jurisdiction to hear all criminal cases.
 Colo. Const. art. VI, § 9(1). While the General Assembly
 may limit a court's subject matter jurisdiction,
 "such limitations must be explicit." Wood v.
 People, 255 P.3d 1136, 1140 (Colo. 2011).
 
 
          ¶29
 Illegal sentences should not be confused with sentences
 imposed in an illegal manner. Crim. P. 35(a). A sentence is
 imposed in an illegal manner "when the trial court
 ignores essential procedural rights or statutory
 considerations in forming the sentence." 15 Robert J.
 Dieter, Colorado Practice Series: Criminal Practice and
 Procedure § 21.10 n.10 (2d ed. 2004); see also
 People v. Bowerman, 258 P.3d 314, 316-17 (Colo.App.
 2010) (relying on this definition); People v.
 Knoeppchen, 2019 COA 34, ¶ 9, 459 P.3d 679, 682
 (same), overruled in part on other grounds by Weeks,
 ¶¶ 9, 47 n.16, 498 P.3d at 149, 157 n.16. Sentences
 imposed in an illegal manner include, but are not limited to,
 those where the court fails to adhere to statutory procedural
 requirements, such as by depriving the defendant of the
 
 17
 
 complete range of presentencing sex-offender testing mandated
 by the legislature, see Collier, 151 P.3d at 673, or
 where the manner of imposing the sentence results in the
 denial of procedural due process, see People v.
 Sisson, 179 P.3d 193, 196 (Colo.App. 2007).
 
 
          ¶30
 We recognize, as has a division of the court of appeals, that
 an illegal sentence could fairly be viewed as encompassing
 procedural infirmities. People v. Wenzinger, 155
 P.3d 415, 418 (Colo.App. 2006). But doing so risks blurring
 the distinction between, on the one hand, sentences that are
 void because they have been imposed either in excess of the
 court's statutory authority or without jurisdiction, and,
 on the other, sentences that are voidable because they have
 been imposed in an illegal manner. See id. And this
 distinction is important, among other reasons, because an
 illegal manner claim is subject to a time limitation, but an
 illegal sentence claim is not.
 
 
          ¶31
 Crim. P. 35(a) specifically states that, although an illegal
 sentence may be corrected "at any time," a sentence
 imposed in an illegal manner may be corrected only
 "within the time provided . . . for the reduction of
 sentence" pursuant to Crim. P. 35(b). A trial court may
 reduce a sentence under Crim. P. 35(b) if an appropriate
 motion is filed within 126 days (120 days during the relevant
 timeframe here) after (1) the imposition of the sentence, (2)
 receipt of the remittitur following either (a) an affirmance
 of the sentence or judgment of conviction or (b) dismissal of
 the
 
 18
 
 appeal, or (3) entry of an appellate court's order or
 judgment denying review or having the effect of upholding the
 sentence or the judgment of conviction. A trial court may
 also reduce a sentence at any time pursuant to a limited
 remand ordered by an appellate court during the pendency of a
 direct appeal. Id.
 
 
          ¶32
 The timeliness of Tennyson's Crim. P. 35(a) claim hinges
 on whether it is an illegal sentence claim or an illegal
 manner claim. If it's the former, it's timely, as he
 could have brought it at any time; if it's the latter,
 it's not, as he didn't bring it within 120 days after
 the imposition of his sentence. Although ascertaining whether
 a claim is an illegal sentence claim or an illegal manner
 claim isn't always easy, our case law provides some
 guidance. A recent case in particular, Baker, is
 instructive here.
 
 
          ¶33
 In Baker, we were asked to determine whether a Crim.
 P. 35(a) claim seeking additional PSCC against a DOC sentence
 was a claim that the sentence was "not authorized by
 law" and was thus illegal. ¶ 1, 452 P.3d at 760. We
 held that the claim could not be an illegal sentence claim
 because "PSCC is not a component of a sentence."
 Id. Relying on the statute defining the credit
 criminal defendants are entitled to receive as a result of
 presentence confinement, see § 18-1.3-405,
 C.R.S. (2024), we explained that PSCC "is time served
 before a sentence is imposed," is "calculated
 independently from the sentence," and "is later
 credited against" the sentence. Baker,
 ¶¶ 1, 16, 452 P.3d at 760, 762. Accordingly, we
 concluded that the
 
 19
 
 defendant's remedy was to file a Crim. P. 36 motion to
 correct the clerical error in the PSCC reflected on his
 mittimus. Baker, ¶ 21, 452 P.3d at 763.
 
 
          ¶34
 Of particular interest here, we explained that, to the extent
 the error was not a clerical one subject to correction under
 Crim. P. 36, the defendant certainly could have challenged
 the trial court's PSCC calculation by bringing a Crim. P.
 35(a) claim "that the sentencing process deviated from
 the statutory requirements, such that the sentence was
 imposed 'in an illegal manner.'" Baker,
 ¶ 20, 452 P.3d at 763. Consequently, we concluded that
 the defendant could have brought a claim arguing that his
 sentence was imposed in an illegal manner and was thus
 in need of correction, even though PSCC is not a
 component of a sentence. Id. The defendant had
 not brought such a claim simply because more than 126 days
 had passed since the imposition of his sentence, rendering
 any illegal manner claim untimely. Id.
 
 
          ¶35
 Mindful of the differences between illegal sentence claims
 and illegal manner claims, we shift our attention now to
 Colorado law governing restitution in criminal cases. In
 light of the circumstances of this case, we keep our focus on
 subsection (1)(b) orders.
 
 
          C.
 Colorado Law Governing Restitution in Criminal Cases
 
 
          ¶36
 A judgment of conviction in Colorado includes the sentence
 imposed. See Crim. P. 32(b)(3)(I). Consequently, we
 have determined that a judgment of conviction is not final
 and appealable until the defendant has been acquitted, the
 
 20
 
 charges have been dismissed in their entirety, or the
 defendant has been convicted and sentenced.
 Sanoff, 187 P.3d at 577. The sentence aspect of a
 final judgment of conviction is the centerpiece of our
 analysis in this case.
 
 
          ¶37
 Before making significant amendments to the restitution
 statutory scheme twenty-five years ago, our General Assembly
 had required that the amount of restitution be fixed by the
 court in every case at the time of sentencing. Id.
 (citing § 16-11-102(4), C.R.S. (1989)). Accordingly, we
 had held that an order requiring restitution, including the
 amount the defendant was obligated to pay, was a component of
 the sentence and, by extension, of the judgment of
 conviction. Id. (citing People v. Johnson,
 780 P.2d 504, 508 (Colo. 1989)).
 
 
          ¶38
 In 2000, however, the legislature substantially revised the
 restitution statutory framework. Id. at 578 (citing
 Ch. 232, sec. 1, §§ 16-18.5-101 to -110, 2000 Colo.
 Sess. Laws 1030, 1030-41). In the process, it enacted an
 integrated system for the imposition and collection of
 restitution. See Meza v. People, 2018 CO 23, ¶
 9, 415 P.3d 303, 306.
 
 
          ¶39
 Under the current statutory regime, every sentence must
 include at least one of the four specifically enumerated
 restitution orders. § 18-1.3-603(1); Meza,
 ¶ 10, 415 P.3d at 307. A sentence must now contain: (1)
 an order pursuant to section 18-1.3-603(1)(a)
 ("subsection (1)(a)") requiring payment of an
 amount of restitution; (2) an order pursuant to subsection
 (1)(b) obligating the defendant to
 
 21
 
 pay restitution but indicating that the amount of restitution
 shall be determined within the subsection (1)(b) deadline;
 (3) an order pursuant to section 18-1.3-603(1)(c)
 ("subsection (1)(c)"), in addition to or in place
 of an order of an amount of restitution, directing the
 defendant to pay restitution covering the actual costs of
 specific future treatment for any victim; and/or (4) an order
 pursuant to section 18-1.3-603(1)(d) ("subsection
 (1)(d)") stating that no payment of restitution is
 required because no victim suffered a pecuniary loss. See
 also Crim. P. 32(b)(3)(I) (indicating that a judgment of
 conviction must include "an order or finding regarding
 restitution as required by section 18-1.3-603,
 C.R.S.").[8] A restitution order that is not authorized
 by subsection (1) fails to satisfy the restitution component
 of a sentence and of the judgment of conviction.
 Sanoff, 187 P.3d 579. Correspondingly, a sentence
 that fails to include at least one of the four enumerated
 restitution orders in subsection (1) is a sentence not
 authorized by law (i.e., an illegal sentence) that may be
 corrected at any time.
 
 
          ¶40
 As pertinent here, while every sentence must continue to
 include consideration of restitution, trial courts have been
 relieved of their obligation to set the amount of restitution
 at the time of sentencing in some cases. Sanoff,
 
 22
 
 187 P.3d at 578. Excluding a subsection (1)(d)
 order, which requires no restitution at all, two of the
 remaining three enumerated orders allow a trial court to find
 restitution liability at sentencing and to postpone the
 determination of the restitution amount until after
 sentencing: an order governed by subsection (1)(b) and an
 order governed by subsection (1)(c). See Meza,
 ¶¶ 14-15, 415 P.3d at 308. Only subsection (1)(a)
 orders require that the amount of restitution be determined
 before entry of the judgment of conviction. Thus, when a
 trial court determines the amount of restitution (and thereby
 also necessarily finds restitution liability) before or
 during sentencing, it enters a subsection (1)(a) order.
 
 
          ¶41
 Here, however, the court entered a restitution order pursuant
 to subsection (1)(b). That subsection allows a trial court,
 at or before sentencing, "to merely order that the
 defendant be obligated to pay restitution and postpone a
 determination of the specific amount of restitution."
 Sanoff, 187 P.3d at 578. Hence, under subsection
 (1)(b), a defendant's judgment of conviction becomes
 final and appealable when the court enters an order making
 the defendant liable to pay restitution, even though the
 amount of restitution hasn't been (and won't be)
 determined until sometime after the sentencing hearing.
 Id. at 578-79.
 
 
          ¶42
 It follows that subsection (1)(b) "clearly
 distinguishes" between "an order assigning
 liability for restitution from a determination of the amount
 of restitution for which the defendant is liable."
 Id. at 578. We acknowledged as much in
 Sanoff,
 
 23
 
 explaining that the statutory amendments enacted in 2000
 "undermine[d] the continuing validity of our earlier
 conclusion that the amount of restitution must be part of a
 judgment of conviction." Id. By specifying in
 subsection (1)(b) that the judgment of conviction "need
 only include a determination whether the defendant is
 obligated to pay restitution, without designation of the
 amount, the General Assembly has made clear its intent that
 the amount of the defendant's liability no longer be a
 required component of a final judgment of conviction" in
 some cases. Id.
 
 
          ¶43
 Accordingly, in the context of subsection (1)(b) orders, the
 amount of restitution "has been severed from the meaning
 of the term 'sentence,' as contemplated by Crim. P.
 32, and therefore from [the] judgment of conviction."
 Id. Because under subsection (1)(b) the amount of
 restitution "is no longer part of the defendant's
 judgment of conviction, as contemplated by Crim. P. 32,"
 neither a proceeding to determine, nor an order assessing,
 the amount of restitution directly affects the judgment of
 conviction. Id. at 578-79. For that reason, after
 issuing a subsection (1)(b) order at sentencing finding
 restitution liability, a trial court may thereafter set the
 amount of restitution even if an appeal of the judgment of
 conviction is already pending. Id. Of course, in
 that scenario, the post-sentencing order determining the
 amount of restitution is still appealable-as a separate,
 final judgment. Id.; see also Meza, ¶
 13, 415 P.3d at 308 (indicating that subsection (1)(b)
 
 24
 
 "necessarily contemplates the possibility of a second
 proceeding within ninety-one days, or longer for good cause,
 that would result in a second, final, appealable
 order").
 
 
          ¶44
 This stands in stark contrast to a subsection (1)(a) order.
 The legislature has not expressed an intent to sever the
 amount of restitution from the sentence in such an order.
 This makes logical sense: A subsection (1)(a) order is an
 order that both finds restitution liability and requires
 payment of an amount of restitution. Consequently, the amount
 of restitution in a subsection (1)(a) order is a component of
 the sentence that "finalizes" and renders
 appealable "the judgment of conviction in
 question." Meza, ¶ 15, 415 P.3d at 308.
 For this reason, any Crim. P. 35(a) challenge to the
 restitution amount in the context of a subsection (1)(a)
 order is an illegal sentence claim, not an illegal manner
 claim. See Baker, ¶ 1, 452 P.3d at 760. To the
 extent the division failed to account for this subtle but
 important distinction, it erred.[9]
 
 25
 
          D.
 Application
 
 
          ¶45
 Tennyson's judgment of conviction became final and
 appealable at the sentencing hearing, where the district
 court implicitly found him generally liable for restitution
 without yet determining the amount of restitution owed. The
 court's post-sentencing determination of the restitution
 amount, while appealable as a separate judgment, was not part
 of Tennyson's sentence. Accordingly, Tennyson's Crim.
 P. 35(a) claim, which challenges the timeliness of the
 determination of the amount of restitution, is an illegal
 manner claim, not an illegal sentence claim.[10] Much like a
 challenge related to PSCC, Tennyson's challenge is to the
 sentencing process followed, not to the legality of his
 sentence. And because Tennyson didn't file a direct
 appeal from his judgment of conviction, he was
 
 26
 
 required to bring his illegal manner claim within 120 days
 after the imposition of his sentence. He failed to do so, and
 therefore, his claim is time-barred.
 
 
          ¶46
 We are not persuaded otherwise by Tennyson's arguments.
 We address each in turn.
 
 
          ¶47
 Tennyson contends that Sanoff is distinguishable. As
 a refresher, we held in that case that because the trial
 court entered a subsection (1)(b) order finding restitution
 liability at sentencing, the judgment of conviction became
 final and appealable, even though the court deferred setting
 the restitution amount until a later date. Sanoff,
 187 P.3d at 576, 578-79. Tennyson asks us to cabin our
 holding in Sanoff to the finality of a judgment of
 conviction under Crim. P. 32(b)(3)(I) for purposes of filing
 an appeal. And because neither the finality nor the
 appealability of his judgment of conviction is an issue
 before us, he questions the relevance of our conclusion in
 Sanoff regarding the severance of the restitution
 amount from a defendant's sentence and judgment of
 conviction in some cases. We see no legal or logical basis to
 read Sanoff so narrowly.
 
 
          ¶48
 Our holding in Sanoff was premised on the
 legislature's decision, as reflected in the
 statutory revisions enacted in 2000, to distinguish in some
 circumstances an order holding a defendant liable for
 restitution from an order setting the amount of restitution.
 187 P.3d at 578. We inferred from that decision that the
 legislature intended for "the amount" of
 restitution to "no longer be a required component"
 
 27
 
 of the sentence or of the final judgment of conviction in
 some cases. Id. Had we believed that this
 legislative intent was limited to determining when a judgment
 of conviction becomes final and appealable, we would have
 said so. Of course, there was no basis for us to say so
 because nothing in section 18-1.3-603 reflects that the
 legislature had such a limitation in mind.
 
 
          ¶49
 Our reference to Crim. P. 32 in Sanoff-"by
 express legislative action, . . . the amount of restitution .
 . . has been severed from . . . 'sentence,' as
 contemplated by Crim. P. 32"-provides no refuge for
 Tennyson. Sanoff, 187 P.3d at 578. We relied on
 Crim. P. 32 there because the rule describes a
 defendant's "sentence" as including
 consideration of restitution pursuant to subsection (1).
 Crim. P. 32(b)(1); see also Sanoff, 187 P.3d at 577.
 Crim. P. 32 though, is just as relevant here-one of the
 questions we answer today is whether, in the context of a
 subsection (1)(b) order, the amount of restitution is part of
 a defendant's "sentence," as that term is
 defined in Crim. P. 32. Nothing about our reference to Crim.
 P. 32 in Sanoff supports Tennyson's position
 that our opinion in that case is inapposite.
 
 
          ¶50
 In any event, when a trial court enters a subsection (1)(b)
 order, it makes little sense to say, on the one hand, that
 the amount of restitution is severed from the
 defendant's sentence for purposes of determining when the
 judgment of conviction becomes final and appealable, while on
 the other, that the amount of restitution is not
 severed from the defendant's sentence for purposes of
 
 28
 
 determining whether a Crim. P. 35(a) claim is an illegal
 sentence claim or an illegal manner claim. As we see it, when
 dealing with subsection (1)(b) orders, the amount of
 restitution is either part of the sentence or is severed from
 it-both for purposes of a direct appeal from the judgment of
 conviction and for purposes of a Crim. P. 35(a) claim in a
 postconviction proceeding. Sanoff answers the
 question for both purposes: Under subsection (1)(b), the
 amount of restitution is severed from the sentence-always.
 Full stop.
 
 
          ¶51
 Tennyson insists, however, that his is an illegal sentence
 claim because we said in Weeks that a trial court
 lacks the "authority" to order restitution after
 the statutory deadline in subsection (1)(b) has lapsed. In
 this regard, Tennyson reminds us that Crim. P. 35(a) allows
 courts to correct a sentence "not authorized by
 law." But we just explained that one of
 Sanoff's teachings is that the amount of
 restitution when a trial court enters a subsection (1)(b)
 order is not part of the sentence. So, a Crim. P.
 35(a) challenge to that amount is necessarily not a claim
 that the sentence imposed was not authorized by law.
 
 
          ¶52
 Importantly, nowhere in Weeks did we imply, let
 alone expressly state, that we were overruling
 Sanoff. To the contrary, Weeks reaffirmed
 some of the lessons from Sanoff on which we rely
 today. Weeks, ¶¶ 30 n.9, 36 n.11, 498 P.3d
 at 153 n.9, 154 n.11.
 
 29
 
          ¶53
 Still, Tennyson maintains that, under Weeks, the
 district court lacked jurisdiction to enter the amount of
 restitution after the subsection (1)(b) deadline expired, and
 therefore, his challenge is best understood as an illegal
 sentence claim. True, an illegal sentence under Crim. P.
 35(a) includes one "imposed without jurisdiction."
 But we never said in Weeks that a trial court loses
 jurisdiction to order restitution when it fails to determine
 the amount of restitution before the subsection (1)(b)
 deadline expires. In fact, we didn't use the word
 "jurisdiction" a single time in that opinion.
 
 
          ¶54
 When we said in Weeks that a trial court lacks
 "authority" to order restitution after the
 subsection (1)(b) deadline expires, we didn't mean that
 it is divested of subject matter jurisdiction to act. Rather,
 we simply meant that it cannot do something that exceeds what
 section 18-1.3-603 permits-that is, it cannot take action
 without the statutory power to do so in an area of the law
 like sentencing, which lies within the legislature's sole
 prerogative.[11] This was consistent with what we'd
 repeatedly said before.
 
 
          ¶55
 For example, in Sanoff, we observed that the trial
 court had reserved the determination of the restitution
 amount "[a]s authorized by the applicable
 statutory
 
 30
 
 provision" (i.e., subsection (1)(b)). 187 P.3d at 577
 (emphasis added). Further, in Meza, we said that the
 trial court lacked "power" to increase the amount
 of restitution previously set because, absent "a
 statutorily authorized order" reserving the amount of
 restitution, the judgment of conviction made that amount
 final and appealable. ¶ 2, 415 P.3d at 305; see also
 id. at ¶ 15, 415 P.3d at 308 (stating that the
 trial court's "power" to order additional
 restitution existed, if at all, "only as a result of
 specific statutory authorization," and explaining that,
 "[i]n the absence of" a subsection (1)(b) or a
 subsection (1)(c) order, "the statute does not purport
 to empower the sentencing court to set an amount of
 restitution following entry of the judgment of conviction in
 question"); People v. Belibi, 2018 CO 24,
 ¶¶ 2, 9-11, 415 P.3d 301, 302-03 (using similar
 language).
 
 
          ¶56
 According to Tennyson, however, separate and apart from our
 decision in Weeks, the subsection (1)(b) deadline is
 jurisdictional. For the reasons articulated in Babcock v.
 People, 2025 CO 26, ¶¶ 22-26, P.3d, one of the
 four companion cases we announce today, we disagree and
 conclude that this deadline is not jurisdictional.
 
 
          ¶57
 Nor does the remedy we granted in Weeks support
 Tennyson's assertion that he brought an illegal sentence
 claim. In Weeks, we vacated the restitution order
 because we determined that by the time the trial court set
 the amount of restitution
 
 31
 
 (after expiration of the subsection (1)(b) deadline), it no
 longer had the authority to do so. Weeks,
 ¶¶ 45, 47, 498 P.3d at 157.
 
 
          ¶58
 But the fact that we resorted to vacatur as a remedy in
 Weeks doesn't transform Tennyson's claim
 into an illegal sentence claim. To begin, Weeks
 didn't involve a postconviction proceeding pursuant to
 Crim. P. 35(a); rather, it came to us on direct appeal from
 the judgment of the restitution amount. Weeks,
 ¶¶ 15-18, 498 P.3d at 150. Therefore, the remedy we
 granted there has no bearing on Tennyson's Crim. P. 35(a)
 claim.
 
 
          ¶59
 Moreover, in Weeks, we could conceive of no
 appropriate remedy, other than vacatur or reversal of
 restitution, when, on direct appeal, a court determines that,
 at sentencing, the trial court entered a subsection (1)(b)
 order finding restitution liability and then failed to timely
 determine the amount of restitution after sentencing. Simply
 remanding a case with instructions for the trial court to
 either re-issue the untimely order setting the restitution
 amount or issue a subsection (1)(a) order to accomplish the
 same thing would leave the deadline in subsection (1)(b)
 toothless. Not surprisingly, even before Weeks,
 we'd sanctioned the automatic vacatur or reversal of
 post-sentencing orders determining the restitution amount
 without statutory authority. See Belibi, ¶ 2,
 415 P.3d at 302 (affirming the judgment of a division of the
 court of appeals vacating the trial court's
 post-sentencing order, which had increased the amount of
 restitution set
 
 32
 
 at sentencing, even though neither a subsection (1)(b) order
 nor a subsection (1)(c) order had entered at sentencing to
 reserve the determination of the amount of restitution, and
 remanding for reinstatement of the restitution order issued
 at sentencing, which was authorized by subsection (1)(a));
 Meza, ¶ 2, 415 P.3d at 305 (reversing the
 judgment of the trial court increasing the amount of
 restitution set at sentencing, even though neither a
 subsection (1)(b) order nor a subsection (1)(c) order had
 entered at sentencing to reserve the determination of the
 amount of restitution, and remanding with instructions to
 reinstate the initial restitution order, which was authorized
 by subsection (1)(a)).[12]
 
 
          ¶60
 Lastly, Tennyson asserts that treating a claim like his as an
 illegal manner claim could yield draconian results because a
 trial court that enters a subsection (1)(b) order might
 determine the amount of restitution more than 126 days (or,
 as relevant here, more than 120 days) after sentencing, which
 would deprive some defendants of any recourse under Crim. P.
 35(a). But the only time this concern is present is in the
 rare event that there is no direct appeal from the judgment
 of conviction or sentence. See Crim. P. 35(b). Since
 Tennyson did not
 
 33
 
 appeal his judgment of conviction or sentence, he had only
 120 days after sentencing to bring his illegal manner claim.
 
 
          ¶61
 Regardless, Tennyson's argument is somewhat of a red
 herring. Because the determination of the restitution amount
 in a subsection (1)(b) scenario is its own final judgment, a
 defendant is always entitled to timely file a direct appeal
 from that judgment, no matter how long the trial
 court may have taken to determine the amount of restitution.
 Tennyson could have filed such an appeal from the judgment
 related to the restitution amount; he did not. Instead, he
 waited approximately ten years after his sentence (and over
 nine years after the post-sentencing order setting the
 restitution amount) to bring his Crim. P. 35(a) claim. That
 was too late.
 
 
          III.
 Conclusion
 
 
          ¶62
 For the foregoing reasons, we conclude that Tennyson's
 Crim. P. 35(a) claim challenging the timeliness of the
 district court's post-sentencing determination of the
 restitution amount pursuant to subsection (1)(b) is an
 illegal manner claim, not an illegal sentence claim. Because
 he did not appeal his judgment of conviction or sentence,
 Tennyson was required to bring his claim within 120 days
 after his sentence was imposed. He failed to do so, and
 therefore, his claim is time-barred. The division reached the
 same conclusion, so we affirm its judgment. JUSTICE
 GABRIEL dissented.
 
 34
 
          
 GABRIEL, JUSTICE dissenting.
 
 
          ¶63
 Just over three years ago, we unanimously concluded in
 People v. Weeks, 2021 CO 75, ¶¶ 1-10, 498
 P.3d 142, 147-49, that prosecutors had routinely violated the
 restitution statute's deadlines by reflexively reserving
 restitution and having trial courts determine restitution
 beyond the statute's ninety-one-day deadline. Today, in a
 series of cases, a majority of this court dramatically
 undercuts (if not effectively overrules) that decision by
 ensuring that in many, if not most, cases, criminal
 defendants affected by the foregoing statutory violations
 will have no remedy and that courts and prosecutors will bear
 no consequences for their statutory violations, thereby
 rendering the deadlines in the restitution statute
 meaningless in many cases.
 
 
          ¶64
 Here, relying on our opinion in Sanoff v. People,
 187 P.3d 576 (Colo. 2008), the majority concludes that the
 amount of restitution imposed on a defendant is not part of
 the defendant's sentence and, therefore, any challenge to
 the amount of restitution is a Crim. P. 35(a) illegal manner
 claim, with its short deadline for filing, rather than a
 Crim. P. 35(a) illegal sentence claim, which may be filed at
 any time. Maj. op. ¶¶ 7, 19, 45, 62.
 
 
          ¶65
 In my view, this determination is contrary to well-settled
 law, it is internally inconsistent, and it will close the
 courthouse door to many, if not most, defendants aggrieved by
 violations of the restitution statute.
 
 35
 
          ¶66
 Accordingly, I respectfully dissent.
 
 
          I.
 Factual Background
 
 
          ¶67
 The material facts are not disputed.
 
 
          ¶68
 Audrey Lee Tennyson pleaded guilty to two counts of
 aggravated robbery, and at the sentencing hearing, which
 occurred on June 3, 2008, the trial court sentenced him to
 concurrent twenty six year prison terms. At that hearing, the
 prosecution requested that restitution be reserved for ninety
 days, and the trial court ruled that the prosecution would
 have ninety days to determine what restitution is due and
 owing. The prosecution did not assert at sentencing that the
 restitution information was unavailable to it at that time.
 
 
          ¶69
 Thereafter, on August 28, 2008 (eighty-six days after
 sentencing), the prosecution submitted a proposed restitution
 order. The court signed this order on October 17, 2008 (136
 days after sentencing), and on November 5, 2008, the court
 signed an amended restitution order correcting a clerical
 error. At no time did the court make a finding of good cause
 to extend the statutory deadline for determining restitution.
 
 
          ¶70
 Tennyson did not file a direct appeal, but approximately ten
 years later, he filed a Crim. P. 35(a) motion asserting,
 among other things, that the restitution award should be
 vacated for violation of the requirements of the restitution
 statute, section 18-1.3-603, C.R.S. (2024). The
 postconviction court ultimately
 
 36
 
 denied that motion, and the division below affirmed,
 concluding that (1) the prosecution's request for
 restitution at sentencing was sufficient to constitute a
 motion for an order that Tennyson was liable for restitution
 and (2) the trial court's order granting the prosecution
 ninety days to determine the restitution that was due and
 owing was not a reservation of restitution in its entirety
 but rather was a finding that Tennyson was liable for
 restitution and that only the determination of the amount of
 restitution was reserved. People v. Tennyson, 2023
 COA 2, ¶¶ 36-37, 528 P.3d 185, 192. The division
 did not address Tennyson's contention that the trial
 court had failed to determine restitution by the statutory
 deadline, concluding that this contention was time-barred
 because it did not qualify as an illegal sentence claim under
 Crim. P. 35(a). Id. at ¶¶ 33, 38, 528 P.3d
 at 191-92. In support of this conclusion, the division
 reasoned, "Because the amount of restitution is not a
 component of a defendant's sentence, any procedural
 deficiency in determining the amount cannot implicate the
 legality of the restitution component of the defendant's
 sentence." Id. at ¶ 33, 528 P.3d at 191.
 ¶71 We then granted Tennyson's petition for a writ
 of certiorari.
 
 
          II.
 Analysis
 
 
          ¶72
 I begin by setting forth the applicable legal principles
 underlying our decision in this case. I then explain why I
 believe that Tennyson's postconviction motion raised a
 timely illegal sentence claim and that Weeks is
 dispositive here.
 
 37
 
          Finally,
 I explain why I believe the majority's reliance on
 Sanoff is incorrect and leads to absurd results.
 
 
          A.
 Applicable Legal Principles
 
 
          ¶73
 Crim. P. 35(a) provides, "The court may correct a
 sentence that was not authorized by law or that was imposed
 without jurisdiction at any time and may correct a sentence
 imposed in an illegal manner within the time provided herein
 for the reduction of sentence."
 
 
          ¶74
 Crim. P. 35(b), in turn, provides, as pertinent here, that a
 court may reduce a defendant's sentence provided that a
 motion for a sentence reduction is filed within 126 days
 after the sentence is imposed or after the entry of any order
 or judgment of an appellate court "denying review or
 having the effect of upholding a judgment of conviction or
 sentence."
 
 
          ¶75
 Accordingly, a defendant may file a motion to correct an
 illegal sentence claim at any time but must file a motion to
 correct a sentence imposed in an illegal manner within 126
 days after sentence is imposed (if, as here, the defendant
 does not file an appeal) or within 126 days after an
 appellate court's judgment denying review or upholding
 the judgment of conviction (if the defendant files an
 appeal).
 
 
          ¶76
 A sentence is not authorized by law and is thus illegal when,
 among other things, it is inconsistent with the statutory
 scheme outlined by the legislature and when any of the
 sentence's components fail to comply with the applicable
 
 38
 
 sentencing statutes. People v. Baker, 2019 CO 97M,
 ¶ 19, 452 P.3d 759, 762; People v.
 Rockwell, 125 P.3d 410, 414 (Colo. 2005); see
 also Delgado v. People, 105 P.3d 634, 637 (Colo. 2005)
 ("[I]t long has been clear that a sentence is illegal
 unless all the components of a sentence fully comply with the
 sentencing statutes."). We have said that illegal
 sentence claims can encompass a wide range of factual
 circumstances, including allegations that the court imposed a
 prison term longer than that permitted by the applicable
 statute and, as pertinent here, "claims that the
 restitution imposed was either not permitted or was in the
 wrong amount." Hunsaker v. People, 2021 CO 83,
 ¶ 19, 500 P.3d 1110, 1114.
 
 
          ¶77
 A sentence is imposed in an illegal manner, in contrast,
 when, among other things, "the trial court ignores
 essential procedural rights or statutory considerations in
 forming the sentence." People v. Bowerman, 258
 P.3d 314, 316 (Colo.App. 2010) (quoting 15 Robert J. Dieter
 & Nancy J. Lichtenstein, Colorado Practice
 Series, Criminal Practice & Procedure § 21.10
 n.10 (2d ed. 2004)).
 
 
          ¶78
 Our restitution statute, section 18-1.3-603, provides, in
 pertinent part:
 
 
 (1) Every order of conviction of a felony . . . shall include
 consideration of restitution. Each such order shall include
 one or more of the following:
 
 
 (a) An order of a specific amount of restitution be paid by
 the defendant;
 
 
 (b) An order that the defendant is obligated to pay
 restitution, but that the specific amount of restitution
 shall be determined within the ninety-one days immediately
 following the order of conviction, unless good cause is
 
 39
 
 shown for extending the time period by which the
 restitution amount shall be determined;
 
 
 (c) An order, in addition to or in place of a specific amount
 of restitution, that the defendant pay restitution covering
 the actual costs of specific future treatment of any victim
 of the crime; or
 
 
 (d) Contain a specific finding that no victim of the crime
 suffered a pecuniary loss and therefore no order for the
 payment of restitution is being entered.
 
 
 (2)(a) The court shall base its order for restitution upon
 information presented to the court by the prosecuting
 attorney, who shall compile such information through victim
 impact statements or other means to determine the amount of
 restitution and the identities of the victims. Further,
 the prosecuting attorney shall present this information
 to the court prior to the order of conviction or within
 ninety-one days, if it is not available prior to the order of
 conviction. The court may extend this date if it finds that
 there are extenuating circumstances affecting the prosecuting
 attorney's ability to determine restitution.
 
 
 (Emphases added.) (At the time of Tennyson's conviction,
 the statutory deadlines were ninety days, see §
 18-1.3-603(1)(b), (2), C.R.S. (2008), rather than the current
 ninety-one days, but that distinction is immaterial here.)
 
 
          ¶79
 We recently construed these provisions in Weeks,
 ¶¶ 29-40, 498 P.3d at 152-55. There, we first
 concluded that section 18-1.3-603(2) controls "the
 timeframe within which the prosecution must submit the
 proposed amount of restitution." Id. at ¶
 31, 498 P.3d at 153. We said that under that subsection, the
 prosecution must file the proposed amount of restitution
 before the judgment of conviction enters, or, if the
 information is not then available, within ninety-one days of
 the judgment of conviction. Id. We further noted
 that the court may extend
 
 40
 
 this deadline only if it finds "extenuating
 circumstances affecting the prosecution's ability to
 determine the proposed amount of restitution."
 Id.
 
 
          ¶80
 We next concluded, based on the statute's plain language,
 that the ninety-one-day deadline set forth in section
 18-1.3-603(1)(b) refers to the court's deadline to
 determine the amount of restitution to be imposed, and we
 observed that the court may extend this deadline only for
 good cause shown. Weeks, ¶ 39, 498 P.3d at
 154-55.
 
 
          ¶81
 Finally, we concluded that any findings of extenuating
 circumstances to extend the prosecution's deadline for
 submitting restitution information and of good cause to
 extend the court's deadline to determine the amount of
 restitution had to be made expressly and before the deadline
 expired. Id. at ¶ 40, 498 P.3d at 155.
 
 
          ¶82
 In so concluding, we recognized that our interpretation of
 the statute had the potential to lead to undesirable results,
 as, for example, allowing a criminal defendant to avoid the
 obligation to pay restitution because the trial court did not
 comply with the statutory deadline. Id. at ¶
 41, 498 P.3d at 155. We, however, affirmed our
 "unwavering confidence" in trial courts to comply
 with the statutory deadline. Id.
 
 
          ¶83
 Applying those principles to the case there before us, where
 the trial court had determined the amount of restitution long
 after the statutory deadline and
 
 41
 
 without a timely finding of good cause, we concluded that by
 the time the trial court had ordered Weeks to pay
 restitution, it lacked the authority to do so. Id.
 at ¶ 45, 498 P.3d at 157. We therefore affirmed the
 court of appeals division's judgment vacating the
 restitution award in that case. Id. at ¶ 47,
 498 P.3d at 157.
 
 
          ¶84
 Having thus set out the governing legal principles, I turn to
 the issues now before us.
 
 
          B.
 Illegal Sentence Claim and Weeks
 
 
          ¶85
 It appears undisputed that the trial court in this case set
 the amount of restitution beyond the statutory deadline and
 that it made no finding of good cause to extend that
 deadline. The question becomes whether Tennyson's Crim.
 P. 35(a) motion should be construed as an illegal sentence
 claim, in which case it was timely, or an illegal manner
 claim, in which case it was not. I would conclude that
 Tennyson's claim was an illegal sentence claim.
 
 
          ¶86
 As noted above, our restitution statute, section
 18-1.3-603(1), requires sentencing courts to consider
 "restitution," and it mandates that sentencing
 courts order (1) a specific amount of restitution; (2) that
 the defendant is obligated to pay restitution but that the
 amount will be determined within ninety-one days following
 the order of conviction (unless good cause is shown); (3)
 that the defendant pay restitution covering the actual costs
 of specific future treatment of
 
 42
 
 a crime victim; or (4) that no victim suffered a pecuniary
 loss and thus no order for the payment of restitution would
 enter.
 
 
          ¶87
 Unlike the majority, Maj. op. ¶¶ 7, 42-43, 45, 50,
 I perceive nothing in this provision that makes liability for
 restitution part of a defendant's sentence but that
 excludes the amount of restitution from that sentence.
 Indeed, as noted above, if the restitution information is
 known at the time of sentencing, then the sentencing court is
 required to enter a specific amount of restitution at that
 time. In that scenario, the amount of the restitution is
 indisputably part of the defendant's sentence, and I
 perceive no rational basis to treat the amount of restitution
 differently merely because it happens to be set at a later
 time. In my view, the statute makes plain that the amount of
 restitution is part of the sentence and judgment of
 conviction.
 
 
          ¶88
 Case law from the appellate courts in this state is in
 accord. Thus, it has long been settled that restitution is
 part of a defendant's sentence. See, e.g.,
 People v. Perez, 2017 COA 52M, ¶ 5, 413 P.3d
 266, 269; People v. Brooks, 250 P.3d 771, 772
 (Colo.App. 2010).
 
 
          ¶89
 Accordingly, I would conclude that the amount of restitution
 is a component of a defendant's sentence. And because
 this component of Tennyson's sentence was entered in
 violation of the restitution statute, our above-described
 case law mandates the conclusion that Tennyson's sentence
 was illegal. See Baker,
 
 43
 
 ¶ 19, 452 P.3d at 762; Rockwell, 125 P.3d at
 414; Delgado, 105 P.3d at 637. Indeed, we recently
 said as much in Hunsaker, ¶ 19, 500 P.3d at
 1114, when we cited as an example of an illegal sentence a
 sentence in which restitution was imposed when it was not
 permitted to be imposed.
 
 
          ¶90
 For these reasons, I would conclude that Tennyson timely
 asserted an illegal sentence claim, and I would further
 conclude, consistent with our determination in
 Weeks, ¶¶ 45, 47, 498 P.3d at 157, that
 Tennyson's sentence was illegal and that the restitution
 award against him should therefore be vacated.
 
 
          ¶91
 In reaching this conclusion, I recognize that this result may
 seem undesirable to some. But as we recognized in
 Weeks, ¶ 41, 498 P.3d at 155, this is a
 necessary byproduct of enforcing the plain language of the
 restitution statute, which we are obligated to do.
 
 
          C.
 Sanoff
 
 
          ¶92
 Notwithstanding the foregoing, the majority, relying on
 Sanoff, 187 P.3d at 578, concludes that when the
 amount of restitution is decided after the statutory deadline
 and without a finding of good cause to extend that deadline,
 then the amount is not part of the defendant's sentence.
 Maj. op. ¶¶ 7, 42-43, 45, 50. From this premise,
 the majority opines that a defendant's postconviction
 challenge to the untimely setting of the amount of
 restitution is an illegal manner claim, and not an illegal
 sentence claim, under Crim. P. 35(a). Maj. op. ¶¶
 7, 19, 45, 62. The
 
 44
 
 consequence of this determination is that Tennyson, who did
 not file a direct appeal, had, under the rule in effect at
 the time, Crim. P. 35(b) (2008), 120 days to challenge the
 setting of the amount of restitution, even though that would
 have required him to challenge the amount before the court
 even set it. Maj. op. ¶ 60. And because Tennyson did not
 bring his challenge within that timeframe, his postconviction
 claim is time-barred. Id. at ¶ 62. I
 respectfully disagree with each part of this analysis.
 
 
          ¶93
 First, as discussed above, and contrary to the majority's
 principal premise, the restitution amount is a
 component of a defendant's sentence.
 
 
          ¶94
 Second, Sanoff, on which the majority so heavily
 relies, is not to the contrary and does not conclude that a
 postconviction challenge to a belated determination of the
 amount of restitution is an illegal manner claim.
 
 
          ¶95
 In Sanoff, 187 P.3d at 577, the defendant was
 convicted of theft, and in October 2000, the trial court
 entered a judgment of conviction that included a prison
 sentence and an order to make restitution. The court,
 however, reserved ruling on the specific amount of
 restitution, and the amount of restitution ultimately was not
 set until January 2003. Id.
 
 
          ¶96
 In the interim, in October 2000, the defendant timely
 appealed her conviction and sentence. Id. A division
 of the court of appeals affirmed, and we denied certiorari.
 Id. Accordingly, the proceedings in the district
 court to
 
 45
 
 determine the amount of restitution occurred while the
 defendant's direct appeal of her conviction and sentence
 were pending. Id.
 
 
          ¶97
 After the trial court set the amount of restitution, the
 defendant appealed again, this time challenging the order
 setting the amount of restitution. Id. As pertinent
 here, the division concluded that the trial court was not
 deprived of jurisdiction by the defendant's earlier
 filing of a notice of appeal, reasoning that the earlier
 notice was premature because the defendant's judgment of
 conviction had not become a final, appealable order until the
 amount of restitution had been set. Id.
 
 
          ¶98
 We ultimately concluded that the defendant's first notice
 of appeal did not divest the trial court of jurisdiction to
 set the restitution amount. Id. at 578. In reaching
 this conclusion, we observed that the restitution statute
 allows a sentencing court to order a defendant to pay
 restitution while postponing the determination of the
 specific amount thereof. Id. We then observed that
 the statute "distinguishes an order assigning liability
 for restitution from a determination of the amount of
 restitution for which the defendant is liable," and this
 undermined the continuing validity of a prior precedent that
 had concluded that the amount of restitution must be part of
 the judgment of conviction. Id. Instead, we read the
 statute as reflecting the legislature's intent to clarify
 that the amount of the defendant's liability is no longer
 a required component of a final
 
 46
 
 judgment of conviction. Id. Thus, we concluded that
 a subsequent determination of the amount of restitution owed
 by a defendant has been severed from the meaning of the term
 "'sentence,' as contemplated by Crim. P.
 32," the rule concerning criminal sentences and
 judgments. Id. (emphasis added).
 
 
          Accordingly,
 the trial court was not divested of jurisdiction to proceed
 to set the amount of restitution by an ongoing appeal, and
 the order setting the amount of restitution constituted a
 "separate, final judgment" that itself was an
 appealable order. Id.
 
 
          ¶99
 For a number of reasons, I do not believe that
 Sanoff applies here.
 
 
          ¶100
 First, Sanoff made clear that the language,
 "severed from the meaning of the term
 'sentence,'" on which the majority so heavily
 relies, Maj. op. ¶¶ 43, 50, was limited to its
 context, namely, the finality of a judgment for purposes of
 an appeal, Sanoff, 187 P.3d at 578. Thus, we
 concluded that finality of the judgment of the
 defendant's conviction, including her sentence and the
 order finding her obligated to make restitution, was
 unaffected by the later judgment setting the amount of
 restitution, and the appeal of the first judgment did not
 divest the court of jurisdiction to decide the amount of
 restitution due and owing. Id.
 
 
          ¶101
 Second, notwithstanding the above-quoted language in
 Sanoff severing the determination of the amount of
 restitution from the sentence for purposes of finality of
 the initial judgment under Crim. P. 32, I perceive
 nothing in Sanoff determining
 
 47
 
 that the amount of restitution is not a component of a
 defendant's sentence. Rather, as noted above,
 Sanoff spoke of two judgments, id., and as
 I read that case, both judgments are part of the
 defendant's sentence. The fact that the amount of
 restitution was set later, however, did not alter the fact
 that the initial judgment was final for purposes of appeal.
 
 
          ¶102
 Third, nothing in Sanoff addresses the question now
 before us, namely, whether a postconviction challenge to an
 untimely order setting the amount of restitution is a
 challenge to the legality of the sentence or simply a
 challenge to the manner in which the sentence was determined.
 Sanoff does not address that issue at all, and I am
 not persuaded that our reasoning in a wholly different
 factual and procedural context applies in this case.
 
 
          ¶103
 Fourth, the majority's reading of Sanoff is
 internally inconsistent. On the one hand, the majority
 concludes that the order setting the amount of restitution is
 not part of Tennyson's sentence. Maj. op. ¶¶ 7,
 42-43, 45, 50. On the other hand, the majority says that
 Tennyson's challenge amounts to an illegal manner claim.
 Id. at ¶¶ 7, 19, 45, 62. As noted above,
 however, Crim. P. 35(a) allows a court to correct "a
 sentence imposed in an illegal manner." (Emphasis
 added.) Accordingly, it is inconsistent to say both that the
 order setting the amount of restitution is not part of
 Tennyson's sentence and that Tennyson's challenge to
 that
 
 48
 
 order is a challenge to the manner in which his sentence was
 determined. The order is either part of his sentence or it is
 not.
 
 
          ¶104
 Fifth, the majority's conclusion leads to absurd results.
 For example, under the majority's view, if the amount of
 restitution is set at the time of sentencing, then it is part
 of the defendant's sentence. Maj. op. ¶ 44. If,
 however, it is determined later, then it is not. Id.
 at ¶¶ 7, 42-43, 45, 50. The majority does not
 persuasively explain why the amount of restitution is part of
 a defendant's sentence if it is determined at the time of
 sentencing but not part of a defendant's sentence if it
 is set later, and I am aware of no authority supporting the
 proposition that the nature of a component of a criminal
 sentence changes depending on when that component is
 determined.
 
 
          ¶105
 In addition, if the majority is correct that a postconviction
 challenge to an untimely determination of the amount of
 restitution is an illegal manner claim that must be brought
 within 126 days of sentencing (if no appeal is filed) or
 within 126 days after entry of an appellate judgment (if the
 defendant files an appeal), then in many cases-like this
 one-the defendant's claim will be time-barred even before
 the trial court determines the amount of restitution. In my
 view, it would be absurd to require a defendant to challenge
 an action that has not yet occurred. Nor is it a sufficient
 answer to say that the defendant simply could have filed a
 direct appeal. Id. at ¶ 61. Our criminal
 procedure rules allow defendants to bring
 
 49
 
 illegal sentence and illegal manner claims even when they do
 not appeal. Crim. P. 35(a). I perceive no basis for
 concluding that defendants lose that right if they do not
 appeal and subsequent events suggest that it would perhaps
 have been better had they done so.
 
 
          ¶106
 The upshot of the majority's opinion today is that many
 defendants will be deprived of their day in court, and courts
 and prosecutors that violate the plain language of the
 restitution statute will face no consequences for their
 actions, rendering the statutory language meaningless in a
 large number of cases.
 
 
          ¶107
 To me, such a result is contrary to basic principles of
 access to justice and of the rule of law. Accordingly, I
 respectfully cannot subscribe to such a result.
 
 
          III.
 Conclusion
 
 
          ¶108
 For these reasons, I would conclude that Tennyson brought a
 timely illegal sentence claim and that under Weeks,
 he was entitled to relief from the illegally imposed
 restitution award. As a result, I would reverse the judgment
 of the division below and remand this case with instructions
 to return the case to the trial court to vacate the illegal
 restitution order.
 
 
          ¶109
 Accordingly, I respectfully dissent.
 
 
 ---------
 
 
 Notes:
 
 
 [1] The one exception, which has no
 relevance here, is a sentence imposed following a
 "conviction for a state traffic misdemeanor offense
 issued by a municipal or county court in which the
 prosecuting attorney is acting as a special deputy district
 attorney pursuant to an agreement with the district
 attorney's office." § 18-1.3-603(1), C.R.S.
 (2024). For the sake of convenience, we omit any mention of
 this anomalous exception when discussing Colorado law on
 restitution in this opinion.
 
 
 [2] We refer to a "sentencing
 hearing" or "sentencing" when describing a
 hearing during which the sentence is imposed and the judgment
 of conviction enters.
 
 
 [3] The legislature amended subsection
 (1)(b) in 2012 to change ninety days to ninety-one days. Ch.
 208, sec. 112, § 18-1.3-603(1)(b), 2012 Colo. Sess. Laws
 822, 866-67.
 
 
 [4] Rule 35 was amended after Tennyson was
 sentenced in 2008. Where, as here, no direct appeal is filed,
 the deadline to bring an illegal manner claim is now 126 days
 (instead of 120 days) after the sentence is imposed. This
 difference is immaterial in this appeal.
 
 
 [5] The prosecution doesn't raise the
 issue of waiver with respect to any claim related to the
 subsection (1)(b) deadline. Accordingly, we do not reach it.
 We "decide cases on the grounds raised and considered in
 the [intermediate appellate court] and included in the
 question on which we granted certiorari." Bragdon v.
 Abbott, 524 U.S. 624, 638 (1998).
 
 
 [6] The original proposed order and the
 amended proposed order included the same restitution amount
 as to each individual victim; the amended proposed order
 simply corrected a miscalculation of the sum total of those
 amounts.
 
 
 [7] When we refer to restitution
 "liability," we mean a general obligation to pay
 restitution without a determination yet of the amount of
 restitution. And when we refer to the "amount of
 restitution" or the "restitution amount," we
 mean the final amount of restitution.
 
 
 [8] The quoted language related to
 restitution was added to Crim. P. 32(b)(3)(I) in 2015 (after
 Tennyson's sentence was imposed in 2008). But the
 legislature's amendments in section 18-1.3-603 became
 effective in 2000, before Tennyson's sentencing
 hearing.
 
 
 [9] In at least one part of its opinion,
 the division correctly confined its holding as
 follows:
 
 
 "[I]n circumstances where the district court
 ordered at . . . sentencing that the defendant was liable to
 pay restitution and then later determined the restitution
 amount under [subsection (1)(b)], a defendant's
 postconviction challenge to the restitution amount is
 cognizable as a challenge to the manner in which the
 sentence was imposed under Rule 35(a)."
 
 
 Tennyson, ¶ 2, 528 P.3d at 187. But the
 division also more broadly implied that the amount of
 restitution is never a component of a defendant's
 sentence. Id. ("[T]he amount of
 restitution is not a part of a defendant's
 sentence."). In fairness, our opinion in Sanoff
 contained similarly imprecise language. 187 P.3d at 578
 ("In fact, . . . the General Assembly has made clear its
 intent that the amount of the defendant's liability no
 longer be a required component of a final judgment of
 conviction."). We corrected course in Meza,
 however, where we stated that, in the context of a subsection
 (1)(a) order, the amount of restitution is a
 component of a defendant's sentence and judgment of
 conviction. ¶ 16, 415 P.3d at 308-09.
 
 
 [10]We recognize that, among the examples
 of illegal sentence claims we offered in Hunsaker,
 we included "claims that the restitution imposed . . .
 was in the wrong amount." ¶ 19, 500 P.3d
 at 1114 (emphasis added). But restitution was not at issue
 there, and we didn't specify which of the four
 statutorily enumerated orders we were referencing. As we
 explained above, a Crim. P. 35(a) claim challenging the
 amount of restitution in a subsection (1)(a) order is,
 indeed, an illegal sentence claim.
 
 
 [11]Although we were not asked to decide
 in Weeks which of the four statutorily enumerated
 restitution orders, if any, the trial court had entered at
 sentencing, it is clear from our opinion and the
 division's opinion that a subsection (1)(b) order was
 implicated. See Snow v. People, 2025 CO 32, ¶
 28, __ P.3d __.
 
 
 [12]Had Tennyson timely filed his Crim.
 P. 35(a) illegal manner claim, he would have been entitled to
 vacatur of the post-sentencing order setting the restitution
 amount, and that, in turn, would have required the district
 court to amend his mittimus to reflect that no restitution
 was required. See § 18-1.3-603(1)(d);
 Weeks, ¶ 10, 498 P.3d at 149.
 
 
 ---------